This is an appeal under Rule 5, Alabama Rules of Civil Procedure, from an interlocutory order of the trial court denying the defendant's motion for summary judgment on Counts Two and Three of the complaint, which allegedly stated claims of bad faith refusal to pay a direct claim. We reverse and remand.
Several issues are raised. The controlling issue, as the parties appear to concede, is whether or not there was a scintilla of evidence before the trial court to establish the bad faith of the defendant insurance company (Prudential) in refusing to pay the plaintiff's claim for hospitalization and surgery between December 8, 1980, and June 16, 1981.
Plaintiff was employed at a nursing home. Between August 1, 1980, and January 3, 1981, her employer provided group health insurance for its employees through the defendant company. On November 14, *Page 594 
1980, plaintiff underwent surgery and resultant hospitalization for a condition diagnosed as tubal pregnancy, her hospitalization concluding on November 23, 1980. On December 8, 1980, with the assistance of Gerald T. Neely, personnel director of the nursing home, plaintiff completed a claim form for the benefits of the policy. This form was accompanied by hospital bills in the amount of $2,352.45. The completed form submitted to Prudential is reproduced below:
[EDITORS' NOTE: FORM IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 595 
On December 23, 1980, the insurance company responded to this claim by sending to the nursing home and the hospital a "group health statement" which contained the explanatory language that:
 "We have requested information from your other insurance carrier. Benefits will be determined as soon as information is received from them."
That statement is reproduced below:
[EDITORS' NOTE: FORM IS ELECTRONICALLY NON-TRANSFERRABLE.]
Mrs. D. Bragg, an office employee of the hospital, responded to the insurance company on January 5, 1981, thusly:
 "We do not show any other insurance coverage. According to our records, you would be the primary insurance carrier. Please advise if there is any additional information needed to process this claim that we can forward to you."
Additionally, Prudential, on January 15, 1981, sent a "Medical Expense Duplicate *Page 596 
Coverage Inquiry" form to Laborer's Local Union # 70, 206 North Hamilton Street, Mobile, Alabama 36603, which is reproduced below:
[EDITORS' NOTE: FORM IS ELECTRONICALLY NON-TRANSFERRABLE.]
According to the forms duplicated in the record, these requests were sent to the union on January 15, 1981, January 21, 1981, and February 14, 1981. *Page 597 
Meanwhile, on December 29, 1980, again with her personnel director's assistance, plaintiff filed another claim with Prudential, this one being for surgical expense; another claim was filed on that same date for the amount of the anesthesiologists' bill. Prudential responded with the same form as used in replying to the first claim, but sent this response to plaintiff's employer with a copy of this response to the anesthesiologists. Then, on January 16, 1981, plaintiff used the same claim form to claim for the amount of her radiology bill, and Prudential's response dated February 4, 1981, was a form reply sent to plaintiff's employer and to the radiologists. This latter form, however, contained a different explanation than those which preceded it:
 "[C]harges shown in the last two columns above [$92.00] do not exceed the deductible and no benefit is payable at this time."
On January 22, 1981, plaintiff filed another claim form on the bill she received for a second surgeon's assistance during her operation. This form, like all those preceding it, contained in the "Remarks" column the same reference to "Laborer's Local Union Number 70." Though not clear from the record, apparently Prudential's first response to this bill was that this bill was "ineligible" and that it should be submitted to "your other carrier."
Another bill for radiologists' services ($12.00) was submitted to Prudential on January 26, 1981. Prudential responded to this claim on March 13 and April 14, 1981, with the same responses as that made to the January 22, 1981, claim.
The filing of these separate claims and some communication between the hospital (which was assignee of the patient's claim) prompted Neely to write the following letter to Prudential on February 24, 1981:
 "Enclosed you will find a copy of a letter I received from Providence Hospital on Margaret A. Coleman. Mrs. Coleman had an Abdominal Hysterectomy at the hospital on November 18, 1980.
 I have submitted six claim forms on her for expenses incurred due to the above surgery. Your office has informed me that payment of these claims is pending until you receive some information from her spouse's insurance company.
 "Would you please advise me as to how long it will take to settle Mrs. Coleman's claims?"
This inquiry was answered by Kim Hook, a claim approver for Prudential, on March 9, 1981:
 "Mrs. Coleman has insurance through her husband's employer. Normally, we would be the primary carrier on our insured, however since her husband's group does not contain the coordination of benefits provision, they are the primary carrier on all members of the family.
 "We have sent an inquiry to the other carrier and have not received a reply. If Mrs. Coleman has the payment statements please forward them and we will be glad to consider the charges. If bills have not been submitted to them please have her do so.
 "If you have any questions, please let me know."
It is clear from the record, therefore, that Prudential did make a positive response disclosing that an evaluation had been made of each claim and that benefits would be determined following receipt of information from the claimant's supposed other insurance carrier. This, in fact, occurred. On January 31, 1981, plaintiff's employer had changed hospital insurance carriers, and Neely assisted plaintiff with a claim on the new carrier's policy. In the course of applying to that company, Neely obtained a letter from the union of plaintiff's husband, dated June 1, 1981, about his insurance. That letter recites:
"Dear Mr. Coleman:
 "The last time you or your dependents were covered under this plan, was November, 1979."
Neely sent a copy of that letter to Kim Hook at Prudential, together with one of his own, dated June 12, 1981:
 "This letter is in regard to the insurance claim of Margaret A. Coleman, Social Security Number 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. *Page 598 
 "In your memorandum of March 9, 1981, you stated you had sent an inquiry to her husband's insurance company concerning payment of benefits. You also stated that they had not responded.
 "I have just filed another claim with our current insurance carrier for Mrs. Coleman. In the process of completing this claim, she mentioned that her claim with Prudential was still pending.
 "Since our new carrier also requested a similar letter about her husband's insurance, I am enclosing a certified copy of a letter I obtained for them. I hope this information will be enough for you to complete her claim.
 "Should you need additional information, please do not hesitate to contact me.
 "Our Prudential policy number was 55538. The policy was cancelled January 31, at our request."
It is a fair assumption that Neely had obtained the union's letter in response to a requirement of the new company similar to what Prudential had required, i.e. information on the union's coverage. In any case Neely obtained the union's letter disclosing no coverage. Neely submitted this information on Mrs. Coleman's behalf, and on June 25, 1982, Prudential notified plaintiff's employer that it had sent a check to Dr. J.B. Howell, one of her physicians.
In determining the propriety of summary judgment, i.e.
whether there exists any genuine issue of material fact, we are limited in our review to the same factors considered by the trial court when it initially ruled on the motion, Ex parteBagby Elevator Electric Co., Inc., 383 So.2d 173 (Ala. 1980), and on such a motion the trial court can consider only the material which is before it at the time of submission of the motion. Stallings v. Angelica Uniform Co., 388 So.2d 942 (Ala. 1980). This principle is applicable here because the Appendix system was elected by the parties and the Appendix contains copies of materials, i.e. affidavits of Margaret Coleman and her husband, Robert Coleman, both filed on April 20, 1982, which were not before the trial court when it ruled on the defendant's summary judgment motion on April 16, 1982. Additionally, there are references in the parties' briefs to a deposition of Gerald Neely which apparently was submitted in support of the motion for summary judgment. However, that deposition was not included in the Appendix by either party and thus, its contents not being contained in the record, cannot be considered in this review. Anonymous v. Anonymous,353 So.2d 515 (Ala. 1977).
Was there a scintilla of evidence before the trial court proving a bad faith refusal to pay the plaintiff's claim? We think not. It should be remembered that the bad faith refusal cause of action does not elevate an insurance company's exercise of caution into an intentional failure to pay or into a dishonest purpose. Neither does bad judgment or negligence which, at most, is demonstrated by these facts. Indeed, in the earliest comments of this Court on the standard to be applied to an insurance company's conduct, it was stated:
 "The reasonable expectations of parties to an insurance contract contemplate a broad range of freedom on the part of the insurer to evaluate claims submitted thereunder and to decline payment in nonmeritorious cases. The corresponding duty to use diligence in the review and prompt payment of meritorious claims is contractually bargained for and the law need not impose a further duty to enforce its negligent breach. Similarly, this freedom (and, perhaps, the duty) not to honor, and thus legally dispute, claims of questionable validity in accordance with the terms of the contract is effectively denied if the law imposes so high a duty of faithful performance as to pose a threat of increased risks in the event the dispute is ultimately resolved adversely to the insurer." (Emphasis added.) Vincent v. Blue Cross-Blue Shield of Alabama, 373 So.2d 1054, 1064 (Ala. 1979).
The facts of this case demonstrate not a refusal to pay in accord with a dishonest purpose, but decision to delay a final determination to pay or not to pay based upon a mistake, perhaps a negligent mistake, *Page 599 
but a mistake nevertheless. The Prudential claim form contained several questions which called for "yes" or "no" answers. One of these was: "At the time charges were incurred: Was your spouse employed?" Plaintiff typed an "x" in the "yes" answer. The question was followed by this stated requirement:
 "If the answer to either is `yes,' please show in `Remarks' the names of the persons employed, and the name and address of respective employers."
In the "Remarks" column plaintiff dutifully placed the following: "Laborer's Local Union Number 70, 206 N. Hamilton St., Mobile, AL 36603 (205)432-0564." It will be noted from a perusal of the form that the space between the spousal inquiry and "Remarks" contains a question referring to other insurance or similar benefits. It too calls for information should any of the questions have been answered "yes." Plaintiff, however, answered each of these questions "no." This obvious internal mistake in the interpretation of the information furnished by plaintiff caused the insurance carrier to proceed on the erroneous basis that plaintiff's identity of her husband's employer was the identification of a duplicate insurer. Defendant all but concedes as much. This process was repeated for each separate claim filed by plaintiff, and the responses of defendant which, although it attempted to verify its conclusion with the union, never received a response from those efforts. Indeed, plaintiff was notified of Prudential's position in other ways. On February 5, 1981, she was sent a "Notice of Medical Expense Insurance Duplicate Coverage Inquiry" by Prudential stating:
 "The claim submitted for the patient indicated above shows possible duplicate coverage. The co-ordination of benefits provisions in your plan requires that benefits payable by other insurance plans be taken into consideration. As soon as the information that we have requested from the other insurance carrier is received, benefits will be determined."
And later Prudential acknowledged receipt of plaintiff's claim, noting that a review was being conducted and that a second request, apparently from the union, had been sent on February 24, 1981.
The plaintiff makes much of the fact that the summons and complaint in this case were served in Mobile on Prudential's local office on June 25, 1981, and that this was the event which triggered Prudential's issuance of a check for the first claim processed on the next day, June 26. Again, we cannot determine from the record when the summons and complaint were received in Jacksonville, Florida, where the check was actually drawn and issued; however, it is reasonable to conclude that the earlier union notice of non-coverage and the Neely letter of June 12, 1981, activated Prudential's decision to pay.
Under these facts which were before the trial court, we are convinced that there was no evidence of an intentional refusal to pay the insured's claim. That element being absent, it is unnecessary to discuss the application of the facts to the other elements of a bad faith refusal cause of action. SeeNational Security Fire Casualty Co. v. Bowen, 417 So.2d 179
(Ala. 1982). The order of the trial court overruling the defendant's motion for summary judgment must be, and is, reversed, and this cause is remanded with directions to enter a judgment for the defendant on that motion, and for further proceedings. It is so ordered.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur. *Page 600