This is an appeal from a judgment based on a jury verdict in favor of the defendants in an action for ejectment. The plaintiff, Margaret Morris Cammorata,[1] alleged that defendants Martha D. Woodruff and Jerry Woodruff (the Woodruffs),[2] entered into possession of the contested property pursuant to a lease-sale agreement, that the Woodruffs failed to purchase the property within the time limit specified in the agreement, and that they refused to quit possession upon notification of Cammorata's intent to possess. The Woodruffs answered, denying the material allegations, and asserted a counterclaim for specific performance, or damages in the event that specific performance was not granted. Defendants also requested a jury trial. Cammorata denied the material allegations of the counterclaim, and filed a third-party complaint against Horace Holland (Holland), the real estate agent who had handled the sale under the lease-sale agreement. Cammorata claimed that if she was found liable for relief under the counterclaim, it would be because of the acts or omissions of Holland. Later, the third-party complaint was amended to seek recovery from Holland on theories of negligence, fraud, conversion, and breach of contract.
After presentation of Cammorata's evidence at trial, the trial court granted Holland's motion for a directed verdict, stating that the statute of limitations had run. Following presentation of the Woodruffs' evidence, the court granted Cammorata's motion for directed verdict as to the defendants' counterclaim, but denied the motion as it pertained to the plaintiff's action in ejectment. That matter went to the jury, which entered a verdict finding "in favor of the defendants for the real property sued for and described in the complaint." After denial of Cammorata's motions for j.n.o.v. and new trial, she appealed. The Woodruffs did not appeal the directed verdict for the plaintiff on their counterclaim.
The following issues are set out in the appeal by the plaintiff:
 1. Was there an oral modification of the lease-sale agreement under the facts of this case, precluding the plaintiff from being entitled to ejectment of the defendant?
 2. Did the agent, Holland, have authority to alter orally the terms of the original written agreement under the facts of this case?
3. Was there evidence of a novation in this case?
 4. Had the applicable statutes of limitations expired as to Holland at the time the complaint against him was filed?
We answer no to the first three questions, and pretermit discussion of the fourth. The judgment of the trial court is reversed.
The following additional facts are necessary to an understanding of this case:
Cammorata and her mother, Mrs. Crouch, jointly owned, with rights of survivorship, *Page 870 
a house located in Anniston, Alabama. Mrs. Crouch originally lived in the house, but moved out in 1968. A few months after Mrs. Crouch moved, Cammorata called Holland, Mrs. Crouch's brother, who was a realtor in Anniston, and asked him to sell the house. Holland agreed, and turned the matter over to one of his employees. Holland did not get personally involved in the transaction. The Woodruffs, hearing that the house was available, contacted Holland Realty. As a result they signed a lease-sale agreement on September 11. This document was forwarded to Cammorata and Mrs. Crouch in Louisiana, where they executed it. The pertinent terms of the lease-sale agreement are herein set out in full:
 1. The Lessors do hereby rent and lease unto the Lessees that certain parcel of property described as follows:
 Lot 11, as shown on Map of W.P. Acker's Subdivision as recorded in the Probate Office of Calhoun County, Alabama, at Plat Book "E", Page 60, situated in Calhoun County, Alabama.
 for and during a term of sixty months at a monthly rental of One Hundred Dollars ($100.00) per month, the first rental payment being due November 1, 1968, and continuing for fifty-nine consecutive months on the 1st day of each month thereafter, if not sooner terminated by the terms and conditions hereof.
 2. In consideration whereof, and the other obligations imposes [sic] upon the Lessors hereunder the Lessees herein hereby covenant and agree to carry out the obligations hereinafter imposed upon them including the payment of said rental payments of One Hundred Dollars ($100.00) per month, such amounts to be paid as stated above.
 On or before five years from date hereof the Lessees agree to purchase and the Lessors agree to sell said property at and for a total purchase price of Sixteen Thousand Dollars ($16,000.00) of which One Thousand Five Hundred Dollars ($1,500.00) has been paid simultaneously with the execution of this agreement. In addition the Lessees will be given credit toward said purchase price of said rental payments of One Hundred Dollars ($100.00) per month, less interest at seven per cent on a declining balance beginning with a balance as of this date of Fourteen Thousand Five Hundred Dollars ($14,500.00). It is understood that the Lessees are not to be given credit for the full amount of the One Hundred Dollar ($100.00) payments, but for those amounts less said interest at seven per cent on the declining balance beginning with Fourteen Thousand Five Hundred Dollars ($14,500.00). The Lessees will be responsible for their own financing, at their own expense, and shall have thirty days to tender the balance due at the end of said five year period. Lessors will co-operate in closing of necessary loans.
 3. Should the Lessees fail to pay the above mentioned installments as they become due or should the Lessees violate any other term or condition of this lease sales agreement, including the obligation to purchase, the Lessors shall have the right, at their option, to take possession of said property after the giving of thirty days written notice, and this contract shall be treated as a simple lease and the Lessors may treat all monies theretofore paid as rent for past occupancy and as liquidated damages which amounts are hereby agreed to be reasonable.
 4. The Lessees further agree that upon the failure for ten days after the due date to pay any one of said installments or to pay the taxes and assessments or insurance premiums which Lessees agree to pay, on said property as they shall mature the Lessors may, at their option, declare this contract to be one of rental and may apply all monies which have theretofore been paid as liquidated damages for past occupancy. The Lessors agree to keep said property insured under a Fire and Extended Coverage policy for at least Fifteen Thousand Dollars ($15,000.00) during the term of this agreement and to name Lessors as insureds thereunder, and to pay the premiums thereon. Lessees agree to pay *Page 871 
all premiums on said policy as they become due and to furnish Lessors with copies of the current policies, renewals, and premium receipts. The Lessees agree to pay all property taxes and special assessments.
 5. As a part of the consideration for this transaction, the Lessees hereby waive all rights to notice, presentment or property exemptions under the Laws and Constitution of the State of Alabama and the United States.
 6. Further it is understood and agreed that the Lessees will commit no waste or permit others no waste to be committed on said property and that they will take good care of the property and keep it in substantially the same conditions that it is now in.
 7. It is understood and agreed that upon the expiration of this lease and after the fulfillment of the terms of this lease the Lessors, their successors or assigns shall immediately execute to the Lessees a good warranty deed with full covenants of warranty, deeding said property to the Lessees with warranties as of this date.
 8. The Lessees may, at any time during the term of this lease provided they are not in default of any of the conditions of this lease, by the giving of ten days notice, pay to the Lessors the full amount of the principal as called for in this agreement and shall at that time be entitled to delivery of a deed as specified in the paragraph immediately above and it is understood by the parties hereto that interest shall be chargeable only to the date of such prepayment.
 9. All payments are to be made to Holland Realty Company, P.O. Box 2023, Anniston, Alabama.
There was no personal contact between the parties at any stage of the transaction, all communication being through Holland's employee.
The Woodruffs made the down payment, took possession of the house, and began making the payments to Holland Realty, the first payment being due November 1, 1968. Holland Realty receipted the payment as rent, deducted a $5.00 collection fee, and sent Cammorata $95.00.
In September 1973, about two months prior to the expiration of the lease-sale agreement, the Woodruffs came into Holland's office and asked him whether they should make arrangements to pay off the balance of the loan. They had not been to a bank, and were not prepared to pay at that time. Mrs. Woodruff testified that Holland told them to continue making their payments as they had, that his sister did not need the money, and that if it was not satisfactory with his sister, the Woodruffs would be notified. Holland testified that he did not get the file out and look at the agreement. He testified that he did not realize that Cammorata was co-owner of the house, nor was he aware how soon the Woodruffs were required to pay off the obligation. He stated that he told the Woodruffs to "wait until the time comes and we will get together with Elva and see what to do." He also told them that he would visit his sister from time to time and that, if and when she wanted the money, they would get it for her. Holland never contacted Cammorata or Mrs. Crouch about this conversation.
The Woodruffs never tendered the balance of the purchase price within the time specified. They continued to make the $100.00 payments as before, and, over the next few years, made some improvements on the house. Cammorata testified that, since the Woodruffs had not paid the balance of the purchase price by the due date, she treated the subsequent payments as rent.
Holland retired in 1974, selling his business to the Morris Agency, which collected the Woodruffs' payments thereafter.
In June, 1980, Mrs. Woodruff, through her attorney, contacted Cammorata about getting a deed to the house. At that time Mrs. Woodruff was ready, willing and able to pay the balance. Cammorata told the attorney that Mrs. Woodruff was renting the house. On July 30, 1980, Cammorata's attorney informed Mrs. Woodruff that on *Page 872 
September 1 the rent would increase to $325.00 per month. Mrs. Woodruff continued to pay $100.00 per month, and on October 29, 1980, Cammorata and Mrs. Crouch filed this suit for ejectment.
Because of the interrelating nature of the first three issues, we discuss them together.
The parties on appeal agree that the lease-sale agreement around which this case revolves is subject to Alabama's statute of frauds, which states in pertinent part:
 In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
. . . . .
 (5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller;
Code 1975, § 8-9-2. The general rule is that a contract required by the statute of frauds to be in writing cannot be modified by subsequent oral agreement. Weatherwax v. Heflin,244 Ala. 210, 12 So.2d 554 (1943). While the authorities are divided as to whether a written contract falling within the statute of frauds may be orally modified as to time of performance, it is generally agreed that if the oral modification is not just an extension of time, but goes to the substance of the contract, the modification is invalid. See,e.g., 37 C.J.S. Frauds, Statute of § 232b (1943). In the case before us, it is clear that the five-year limitation placed on the lease-purchase agreement was a material element of the contract, and could not be changed orally to alter the written agreement.
The Woodruffs, at trial, submitted that the alleged modification amounted to a novation, creating a new contract. Such a new contract, if found in this case, would also be subject to the statute of frauds. However, we find no novation. A novation is the substitution of one contract for another, the effect of which is to release him who is bound by the original contract of which novation is asserted. Bledsoe v. Cargill,Inc., 376 So.2d 735 (Ala.Civ.App. 1979). To effect a novation the parties must agree that the new agreement has that effect.Moquin v. Cochran, 380 So.2d 819 (Ala. 1980). The new agreement must meet all the requisites as to validity of a contract. 66 C.J.S. Novation § 36 (1950). The Woodruffs, who have the burden of proving a novation, have failed to show the elements of a new agreement. There is no showing that the obligations under the former agreement were discharged, that there was mutual assent to a new agreement, consideration, or definite terms to which the parties could be bound under the new agreement. Even assuming, for the moment, that Cammorata could be bound by the actions of Holland, and that notice to him could be imputed to her, it is clear from the testimony that Holland did not consider that he was either modifying a written agreement or entering into a novation on behalf of Cammorata on her mother.
Of course, neither a modification nor a novation made under the facts of this case, even if found to escape the requirements of the statute of frauds, can bind Cammorata unless it is found that Holland had authority to act as her agent at the time of the 1973 conversation between Holland and the Woodruffs. Again, the statute of frauds comes into play, requiring an agent acting for his principal in a matter within the statute of frauds to be "lawfully authorized in writing." A contract made by an agent without authority in writing from his principal is void. Thompson v. New South Coal Company, 135 Ala. 630,34 So. 31 (1903). Although the trial court charged the jury on implied and apparent authority of an agent, we find that such *Page 873 
theories are not applicable to a situation which falls within the statute of frauds.
It has been held by this court that an oral contract for the sale of land, entered into by an agent without written authority, is removed from the statute of frauds when it is clearly ratified by the principal. Penney v. Lyle, 205 Ala. 476,88 So. 580 (1921). In Penney, the court held that evidence that the agent sold the land to the buyer, accepted payment in full, and put the buyer in possession, plus evidence that the principal knew for several years that the buyer was in possession of the land under the contract of sale with his agent, would show ratification.
Although the judge charged the jury on ratification in the case before us, evidence on that issue is insufficient. The law of ratification requires that the principal have knowledge of the facts attending the unauthorized act of the agent. VanHeuvel v. Roberts, 221 Ala. 83, 127 So. 506 (1930); Gillespie,Shields Co. v. I. Berman Son, 212 Ala. 72, 101 So. 681
(1924); Exchange Security Bank v. King, 53 Ala. App. 429,301 So.2d 193 (1974). It was undisputed at trial that neither Cammorata nor Mrs. Crouch was told of the conversation between Holland and the Woodruffs. The Woodruffs were put into possession of the house under the written lease-purchase agreement, and there was no communication with Cammorata until 1980 to alert her that the Woodruffs considered that they had a new agreement. Thus, there is no evidence that an oral modification, if made by Holland, was ratified by Cammorata or Mrs. Crouch.
The Woodruffs do not claim that the alleged oral modification of the agreement would not normally fall under the statute of frauds. In their brief, however, they argue that the doctrine of estoppel prevents Cammorata from asserting the statute in this case, whether Holland had authority to act for her or not. See 73 Am.Jur.2d, Statute of Frauds, § 567 (1974); McGowin v.Cobb, 249 Ala. 561, 32 So.2d 36 (1947). We point out that estoppel is an affirmative defense in Alabama, and must be raised on pleading. A.R.Civ.P., Rule 8 (c); Kimbrell v. City ofBessemer, 380 So.2d 838 (Ala. 1980); Hendricks v. Blake,291 Ala. 575, 285 So.2d 82 (1973). In the case before us, the defendants did not plead estoppel in their answer, and the trial judge did not charge the jury on it. This court will decline to consider estoppel which is raised for the first time on appeal. See Dobbins v. Getz Exterminators of Alabama, Inc.,382 So.2d 1135 (Ala.Civ.App. 1980).
A jury verdict is presumed to be correct. A trial court's denial of a motion for new trial strengthens the presumption of correctness of the verdict; and if supported by evidence, it will not be reversed unless plainly and palpably wrong. Osbornev. Cobb, 410 So.2d 396 (Ala. 1982). In light of the foregoing discussion of the law and the facts of the case before us, we are left with the conclusion that the evidence presented at trial does not support the verdict of the jury. Therefore, we reverse the judgment of the trial court, and remand this case to the trial court for proceedings consistent with this opinion. Because of this decision, discussion of the fourth issue raised by the appellant is pretermitted.
REVERSED AND REMANDED.
TORBERT, FAULKNER, ALMON and BEATTY, JJ., concur.
[1] The suit was originally filed by Cammorata and her mother, Mrs. Elva Crouch, who were co-owners of the contested property. Mrs. Crouch died during the pendency of the suit, and Cammorata became sole owner of the property by survivorship deed.
[2] Mrs. Woodruff and her husband, Joe Woodruff, were parties to the transaction giving rise to this suit. Mr. Woodruff died in 1974, and his son, Jerry Woodruff, named defendant in this suit, was his sole heir.