This is an appeal by the plaintiff, Charles J. Arndt, Inc. ("Arndt"), from a summary judgment rendered for the defendant, the City of Birmingham ("City"), in the plaintiff's action to recover damages for breach of contract. We affirm.
The plaintiff-appellant, Arndt, which operates a men's clothing store, held a long-term lease in the Clark Building, located on Block 60 of downtown Birmingham. Redevelopment of Block 60 was called for under a plan adopted on September 9, 1981, by the City pursuant to its "Comprehensive Revitalization Strategy, Redevelopment Plan and Urban Renewal Plan for the Master Plan for Downtown Birmingham, Alabama." In furtherance of this plan for Block 60, the City entered into a written agreement with Metropolitan Properties, Inc. ("Metropolitan") on September 30, 1981. Thereafter, Metropolitan began negotiations with Arndt (and with others who held property interests in Block 60), with the stated purpose of buying those property interests so that the entire block would be available for redevelopment. Under the terms of the agreement between the City and Metropolitan, if Metropolitan was unable to acquire options on or title to the property on Block 60 by a certain date, the City would acquire said property, either by negotiating a purchase or by condemnation. The original agreement was amended to provide extra time within which Metropolitan could acquire the property. However, in the spring of 1982, the City took over negotiations with Arndt due to Metropolitan's inability to meet the extended deadline. The original agreement between the City and Metropolitan was once again extended in May 1982 to allow the City extra time within which to acquire the property interests that Metropolitan had been unable to obtain.
Subsequently, on October 20, 1982, the City entered into an option agreement with Arndt whereby the City was, for a fee of $9,000, refundable to the City if the option was not exercised within a specified period of time, given the right to cancel and terminate Arndt's leasehold interest in the Clark Building in the event said building should be acquired pursuant to the redevelopment plan. The option was to continue until 6:00 p.m. on December 14, 1982, and, by its terms, the option provided for assignment, without the prior consent of Arndt, to either Metropolitan or G-B Corporation.
G-B Corporation was formed by Raymond Gotlieb (the majority shareholder of Metropolitan) and Robert Bohorfoush, who was, at the time G-B Corporation was formed, also a shareholder in Metropolitan. Bohorfoush testified on deposition that G-B Corporation was formed primarily to serve as a development company, while Metropolitan was primarily a management company. Gotlieb was president of both corporations at the time Metropolitan entered into its agreement with the City regarding the redevelopment of Block 60 and at the time the option on Arndt's leasehold was ultimately exercised.
On the same day the City entered into the option agreement with Arndt, it assigned that agreement to Metropolitan. Thereafter, on December 14, 1982, the option agreement was "amended" by a written agreement between Arndt and Metropolitan. The amendment extended the time within which the option could be exercised until 6:00 p.m. on December 27, 1982, and made the $9,000 option fee non-refundable. A second amendment to the option agreement was executed by Arndt and Metropolitan on December 27, 1982, further extending the term to 2:00 p.m. on December 30, 1982. On December 30, 1982, a written exercise of the option was delivered to Arndt. It was signed by Gotlieb in his capacity as president of G-B Corporation, which purported to be the assignee of the City.
Prior to the written exercise of the option, specifically on December 29, 1982, Arndt purchased a new building in which it could continue to operate its clothing business.
There is no evidence in the record that the City assigned the option on the Arndt leasehold interest to anyone other than Metropolitan. Furthermore, Gotlieb testified on deposition that there was never an *Page 399 
actual assignment of the option from Metropolitan to G-B Corporation.
Neither Metropolitan nor G-B Corporation ever honored the terms of the option agreement after G-B Corporation exercised the option on December 30, 1982.
Arndt filed suit on March 26, 1985, against the City, Metropolitan, and G-B Corporation, alleging that the defendants had breached the option contract originally negotiated between Arndt and the City, but subsequently assigned by the City to Metropolitan, and ultimately, after two amendments, exercised by G-B Corporation in its name only purporting to be the assignee of the City. Arndt based its action against the City on the theory that the City was liable for G-B Corporation's subsequent breach of the contract because the City had allegedly entered into an implied joint venture with Metropolitan and G-B Corporation for the redevelopment of Block 60. The trial court entered summary judgment in favor of the City, but made no findings of fact. The summary judgment in favor of the City was made final pursuant to Rule 54(b), A.R.Civ.P. This appeal, which concerns the City only, followed.
Arndt argues on appeal that the only basis upon which the trial court could have entered summary judgment for the City would have been upon a determination that no joint venture existed between the City, Metropolitan, and G-B Corporation. Therefore, the sole issue raised is whether the trial court had before it sufficient evidence to create a genuine issue of material fact, i.e., whether there was sufficient evidence of the existence of a joint venture to present a jury question and make summary judgment improper.
Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. Mere speculation that an issue of fact exists is not enough to defeat a summary judgment motion, nor may the opposing party rest upon mere conclusory allegations to prove that a genuine issue of fact exists. Williams v. Palmer, 277 Ala. 188,168 So.2d 220 (1964). Rather, the opposing party must bring forth specific facts, which would be admissible, to show that there is a genuine issue of material fact. Sartino v. First AlabamaBank, 435 So.2d 39 (Ala. 1983). When the evidence submitted is viewed in a light most favorable to Arndt, a scintilla of evidence supporting its position is all that is necessary to overcome a motion for summary judgment. Ward v. Rhodes,Hammonds Beck, Inc., 511 So.2d 159 (Ala. 1987). This Court is limited to a review of the evidence considered by the trial court when it granted the motion. Turner v. Systems Fuel, Inc.,475 So.2d 539 (Ala. 1985); Prudential Ins. Co. v. Coleman,428 So.2d 593 (Ala. 1983).
Arndt argues that the trial court granted summary judgment despite significant evidence before it that a joint venture existed between the co-defendants, and that in doing so the trial court committed reversible error.
 "A joint venture is an association of persons with intent, by way of express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each participant shall stand in the relation of principal as well as agent as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture."
46 Am.Jur.2d Joint Ventures § 1 (1969). As we stated in Moorev. Merchants Planters Bank, 434 So.2d 751, 753 (Ala. 1983), "while every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control." (Emphasis added.)
What constitutes a joint venture is a question of law, but whether a joint venture exists has been held to be a question *Page 400 
of fact for the jury. 46 Am.Jur.2d Joint Ventures § 7 (1969). Unless the trial court can say that the parties were or were not engaged in a joint venture as a matter of law, the question must be presented to the jury. As between the parties themselves, the relationship of joint venturers is a matter of intent. As to third persons, it is generally the rule that the legal rather than the actual intent of the parties controls. 46 Am.Jur.2d Joint Ventures § 9 (1969). "The burden of establishing the existence of a joint venture is upon the party asserting that the relation exists." Moore v. Merchants Planters Bank, 434 So.2d 751, 753 (Ala. 1983); Kim v.Chamberlain, 504 So.2d 1213 (Ala.Civ.App. 1987).
Viewing the evidence, as we must, in a light most favorable to the non-movant Arndt, it does not appear that Arndt has presented a scintilla of evidence that G-B Corporation, the entity that exercised the option to purchase Arndt's leasehold interest, was a joint venturer with the City, i.e., at the very least that G-B Corporation had the right to joint control of the Block 60 project and that the City and G-B Corporation shared a community of interest. In fact, the only evidence before the trial court regarding any relationship between the City and G-B Corporation is the City's reference to G-B Corporation in the option agreement entered into by the City and Arndt on October 20, 1982. In paragraph (5) of that agreement, the City reserves the right to assign the agreement to Metropolitan or to G-B Corporation without the prior consent of Arndt. It is undisputed that G-B Corporation is a legal entity distinct from Metropolitan, even though the two share some common shareholders and a common president.
Because of the reasoning expressed hereinafter, we need not reach the further question of whether the City's dealings with Metropolitan established the existence of a joint venture between these two entities.
The written agreement between the City and Metropolitan specifically disclaims the intention of the parties to form a joint venture, and there is no evidence of any written agreement between the City and G-B Corporation. The City's agreement with Metropolitan reads in pertinent part as follows:
 "25. Both the City and Redeveloper agree that nothing contained in this Agreement, or any act of Redeveloper or of the City shall be deemed or construed by either of the parties hereto, or by third persons, to create any relationship of third party beneficiary hereof, or of principal and agent or of a limited or a general partnership or of a joint venture or of any association or relationship between Redeveloper and the City other than as set forth herein."
Therefore, any finding of joint venture would have to be implied from the relationship of the parties rather than from their written agreement.
The City argues that it cannot be held liable on the option contract it originally negotiated with Arndt, which was assigned to Metropolitan and purportedly exercised by G-B Corporation, because the City did not have a written joint venture agreement with either G-B Corporation or Metropolitan and did not exercise the option in writing itself, both of which are required by the Statute of Frauds as codified in Alabama at Code 1975, § 8-9-2. The relevant portion of the Statute reads as follows:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . . .
 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."
This language is broad enough to include in its mandate oral agreements to enter joint ventures that call for the conveyance of an *Page 401 
interest in real property. Hunte v. Blake, 476 So.2d 75 (Ala. 1985); Pierce v. Murphree, 274 Ala. 20, 145 So.2d 207 (1962);Talley v. Talley, 248 Ala. 84, 26 So.2d 586 (1946).
Of course, this Court has previously held that options for the purchase of an interest in real property fall within the above cited statute. Foy v. Foy, 484 So.2d 439 (Ala. 1986), citing Griese-Traylor Corp. v. First National Bank ofBirmingham, 572 F.2d 1039 (5th Cir. 1978). The option agreement executed between Arndt and the City on October 20, 1982, was the only such option signed by the City. After negotiating and entering into the aforementioned agreement, the City assigned its interest therein to Metropolitan, as it was authorized to do by the terms of the agreement, which reads at paragraph (5) as follows: "This Option Agreement may be assigned by the City to G-B Corporation or to Metropolitan Properties, Inc., without the prior consent of Arndt." Subsequent to the assignment, Metropolitan (the assignee) and Arndt negotiated between themselves two written amendments of the agreement, which not only extended the time for performance but altered the character of the $9,000 option fee from refundable to nonrefundable in the event that Metropolitan should elect not to exercise the option. These written amendments were executed by Arndt and Metropolitan only. The general rule in Alabama is that any contract required by the Statute of Frauds to be in writing cannot be modified by subsequent oral agreement.Cammorata v. Woodruff, 445 So.2d 867 (Ala. 1983). In other words, any modification of such a contract would have to be in writing and signed by the party to be charged therewith.Cammorata, 445 So.2d at 872, acknowledges that if a subsequent modification includes not just an extension of time for performance but goes to the substance of the agreement, the modification is within the Statute of Frauds. Further, the original option agreement states at paragraph (6): "This Option Agreement may not be modified or amended unless such amendment is set forth in writing and signed by both Arndt and the City."
The City argues that it was never a party to the option agreement that was ultimately exercised by G-B Corporation. Regardless of the validity of this contention, it is not the option agreement itself that would bind the City, as that agreement could have expired by its own terms without any further obligation on the part of the City if not properly exercised within the appropriate time frame. It is, therefore, the exercise of the option that is determinative of the matter.
The undisputed evidence is that the option, as twice amended, was in fact exercised, in writing, by Raymond Gotlieb as president of and on behalf of G-B Corporation on December 30, 1982. In Moss v. Cogle, 267 Ala. 208, 211, 101 So.2d 314
(1958), this Court stated:
 "The notice of election to exercise the option [to purchase land] is within the Statute of Frauds and is void unless signed and subscribed by the optionor (purchaser) or some other person by him lawfully authorized in writing, . . . where neither purchase money for the land, nor any portion thereof has been paid and the purchaser has not been put in possession by the sellers."
In order to take a contract for the purchase of an interest in land outside the Statute of Frauds, payment and possession by the buyer must concur, i.e., both are necessary. Pierce v.Murphree, 274 Ala. 20, 145 So.2d 207 (1962). There is no evidence before this Court, nor indeed was there any before the trial court, that this exception to the Statute of Frauds would apply here. There is likewise no evidence before us that the City ever attempted to exercise the option, in writing or otherwise, having previously assigned it to Metropolitan.
Arndt argues that under its theory of joint venturer liability, the implied joint venture relationship would somehow infuse G-B Corporation with the apparent authority to act on behalf of the City and to bind the City without the City's actual execution of the exercise document. While we have noted above that a joint venture may *Page 402 
be implied as to third parties, where no written joint venture agreement exists so as to imbue all parties to the alleged joint venture with authority to bind the others for debts incurred or on contracts executed by one of the alleged joint venturers, this general rule must give way to the Statute of Frauds when the subject of the contract or debt involves the purchase of real property or an interest therein. As stated inCammorata v. Woodruff, supra, the Statute of Frauds requires "an agent acting for his principal in a matter within the statute of frauds to be 'lawfully authorized in writing.' A contract made by an agent without authority in writing from his principal is void." We went on to state in Cammorata that the theory of implied or apparent authority is not applicable to a situation within the Statute of Frauds.
The nature of the contract at issue here, not the nature of the relationship of the parties, is the determinative factor in this case. While a third party might be justified in relying on the appearance of joint venture among several parties under other circumstances not involving the purchase of real property or an interest therein, in this state it is clear that where there is no written joint venture agreement between the parties and where the purchaser has not been put in possession and paid at least a portion of the purchase price, an implied or apparent joint venture will not be found to support a claim against a nonsignatory party to the exercise of an option to purchase land. Accordingly, the trial court did not err in entering summary judgment for the City.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX and HOUSTON, JJ., concur.
ALMON, J., concurs in the result.