Jim T. Norman, Jr., individually and d/b/a Norman Oil Company, appeals from a summary judgment in favor of defendants Amoco Oil Company, Larry B. Otto, and Terry R. Weaver. A fourth defendant is not involved in this appeal. We affirm.
Norman was a jobber operating in an area that included Pike County, Alabama, under contract with Amoco Oil, acting as a wholesaler of Amoco products to individual dealers who were under contract with him. Norman entered into a certain contract with Amoco, the term of which was from October 1, 1984, to September 30, 1987; he made that contract with Weaver, an Amoco district manager. Weaver had been the district manager when Norman had entered into similar contracts with Amoco on prior occasions.
At some point during the term of this particular contract, Norman was informed by Otto, an Amoco territory manager, that Amoco intended to invite Russell Oil Company ("Russell") into Pike County to do business as an Amoco jobber.[1] Norman says that after he was informed of Russell's and Amoco's intentions, he asked Otto if he could expand his operations into Montgomery County and that Otto replied that he could expand only if Amoco "invited" him to do so. According to Norman, Amoco refused repeated requests to allow him to expand his operation into Montgomery County and informed him that the reason for its refusal was that his "profitability index" (referred to in the record as "P.I.") was too low. Norman states that Amoco refused his request for a credit card machine to use in his planned expansion and that at the end of his contract term Amoco replaced him with Russell.
The evidence clearly shows that Norman was informed by his attorneys that his contract with Amoco permitted him to expand his operation outside of his service area without Amoco's invitation and that after being so informed, Norman made a decision not to expand his operations into Montgomery County. Just as the contract did not provide Norman with exclusivity in his territory, it did not prohibit him from selling Amoco products outside of that area without the express permission of Amoco.[2]
The defendants contend that although Norman stated that he did not understand the import of the profitability index, he was actually well aware of its import and that as early as July 1985, he had been informed that his contract would not be renewed if his sales performance did not improve.
Norman sued Amoco, Otto, Weaver, and Russell, alleging breach of contract, fraudulent misrepresentation, fraudulent suppression of material facts, and intentional interference with a business relationship. Summary judgment was denied on the breach of contract claim but was granted as to all other counts. Summary judgment was made final pursuant to Rule 54(b), A.R.Civ.P. Norman appeals from that summary judgment, but only as it relates to the fraudulent misrepresentation and fraudulent suppression counts and only as to defendants Amoco, Weaver, and Otto.
 FRAUDULENT MISREPRESENTATION
The trial court found that Norman "could not have reasonably relied on defendant Otto's statement that he could not expand into Montgomery County without permission" and that, therefore, Norman had no cause of action based on fraudulent misrepresentation. We agree.
Otto admitted in his deposition that when Norman told him he was going to expand his operation into Montgomery County, he told Norman that he would not be given a credit card machine or a sign. However, *Page 905 
when Norman presented his attorneys with the contract and told them of Otto's statement, his attorneys advised him that he was within his rights to do business in Montgomery County.[3]
In May of 1986, Amoco notified the plaintiff by letter and advised him that he was free to expand into Montgomery if he chose to do so. Shortly after receiving this letter, the plaintiff was informed by Otto that "anybody could go anywhere." Moreover, in deposition testimony, the plaintiff stated that even though he knew he could expand into the Montgomery area, he chose not to do so of his own accord.
These facts indicate that the plaintiff did not, in fact, rely on the alleged express misrepresentations by Amoco. Without such reliance, the plaintiff may not recover for fraudulent misrepresentation.
 FRAUDULENT SUPPRESSION
In its order entering summary judgment, the trial court stated the following:
 "The Court finds as a matter of law that the Defendants Amoco, Weaver and Otto were not under a duty to provide Norman with a detailed explanation of Amoco's profit index. The Court further finds that Norman was aware that his profit index would increase if his sales volume increased, and that sales volumes were the only variables in the profit index which Norman could influence. See, Bank of Red Bay v. King, 482 So.2d 274, 282 (Ala. 1985). Additionally, the Court finds that Norman did not act to his detriment because of Amoco's refusal to disclose the formula for the profit index, and that the non-disclosure of the definition of the profit index by Amoco was not for purpose of deceit."
Norman, in his first deposition, admitted that Otto informed him that he needed to increase his profitability index by increasing the sales volume. He also stated that Otto told him that the areas he specifically needed to increase were premium fuel, diesel fuel, and heavy oils. Thus, it appears that even though Norman was not given the formula used in arriving at the profitability index, he was made aware of its components and of the areas that he needed to emphasize.
In order to recover for fraudulent suppression, a plaintiff must establish the following elements: "(1) a duty to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury." Wilson v.Brown, 496 So.2d 756, 759 (Ala. 1986). The plaintiff has presented no evidence that Amoco had a duty to inform him completely of the makeup of the profitability index.
Under Code 1975, § 6-5-102, "a duty to speak depends upon the fiduciary or other relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case." Hall Motor Co. v.Furman, 285 Ala. 499, 234 So.2d 37 (1970). "When the parties to a transaction are knowledgeable and capable of handling their affairs," the obligation to disclose does not arise. Trio Broadcasters, Inc. v. Ward, 495 So.2d 621,624 (Ala. 1986). Prior to the contract at issue here, the plaintiff had been an Amoco jobber for approximately 12 years. The plaintiff was not a newcomer in the service station industry, but, instead, had had significant experience in that industry. His primary distribution area was large geographically and his work involved executing contracts with individual station owners. Based on our reasoning in TrioBroadcasters, supra, the trial court properly concluded that Amoco was under no duty to disclose to Norman all of the details of the profitability index.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.
[1] The counts of the complaint stating claims against defendant Russell Oil Company are not included in the record on appeal.
[2] Section 18 of the contract reads, in part, as follows:
 "Seller reserves the right to make other provisions for the marketing of its product within such area. Nothing contained in this contract shall preclude Buyer from selling or soliciting the sale of the products covered by this contract outside such area or confer upon Buyer exclusive marketing rights for any such product within such area."
[3] The contract clearly states that the buyer, Norman, is not precluded from selling Amoco's products outside his principal area of responsibility. Therefore, the interpretation given to Norman by his attorneys was correct. *Page 906