Logan Gewin and Julien Marx, the plaintiffs in this business dispute, appeal from a judgment based on a directed verdict entered by the trial judge in favor of the defendant TCF Asset Management Corporation ("TCF") on the plaintiffs' claims alleging breach of contract, promissory fraud, and fraudulent suppression.
The lawsuit arose from negotiations for a real estate transaction between the plaintiffs and TCF involving the "Scott's Furniture" warehouse in Mobile, which was owned by TCF. TCF and Gewin and Marx did not negotiate directly. Rather, TCF was represented by Adam Metcalfe, a Mobile real estate broker with whom TCF had listed the property, and Gewin and Marx were represented by Ben Diamond, a Mobile real estate broker who had brought the property to their attention. On June 4, 1991, Gewin and Marx and TCF entered into a written contract for the sale of the property. The sale was contingent upon certain financing arrangements, including Gewin and Marx's assuming, and TCF's being totally released from, the existing mortgage on the property, which was held by Pan American Life Insurance Company ("Pan American"). Gewin and Marx wished to assume the existing mortgage rather than obtain new financing, because the mortgage was of such an age that most of the payments were being applied to reduce the principal rather than to pay interest. The purchase price was set at $675,000, and Gewin and Marx made a refundable payment of $10,000 in earnest money. The closing was planned for July 21, 1991.
The sales contract provided that if Gewin and Marx could not meet the financing contingencies within 30 days of the contract date, they had the option of extending the contract period for another 30 days, by making a nonrefundable payment of $7,330 to TCF. The contract provided for two such options periods. If the sale was completed, the extension payments were to be credited against the purchase price. Shortly after the sales contract was signed, Gewin and Marx contacted Pan American, seeking to assume TCF's mortgage and to have TCF released from that mortgage. On July 3, 1991, Gewin and Marx made their first payment to TCF to extend the contract for another 30 days. On July 18, 1991, Pan American informed Gewin and Marx that it would permit them to assume the mortgage if they purchased the property, but that it would not release TCF from its liability under the mortgage. Thereafter, Gewin and Marx began to negotiate with TCF as to whether it was willing to let them assume the mortgage, yet still remain liable on it itself. On August 2, 1991, Gewin and Marx made a second payment to TCF to extend the contract for another 30 days while negotiations continued.
Eventually, TCF refused to remain liable on the mortgage to Pan American, and the sale of the property was never completed. Gewin and Marx later learned that at the time they were asking Pan American to release TCF from the mortgage on the property, TCF and Pan American were involved in litigation in the United States District Court for the Southern District of Alabama. In 1989, TCF had filed an action seeking a declaration that a judgment lien it held on a certain Mobile property was superior to all other liens on that property, including a mortgage held by Pan American. The property involved in the federal lawsuit is not the Scott's Furniture warehouse involved in this litigation.
In April 1992, Gewin and Marx sued TCF, seeking specific performance of the June 4, 1991, sales contract. Thereafter, TCF moved for a summary judgment. In response, Gewin and Marx asserted that the contract they wished to have specifically performed consisted of both the June 4, 1991, contract and a series of letters amending it. On December 10, 1992, the trial judge entered a summary judgment in favor of TCF, holding that there was substantial disagreement over the fundamental terms of the contract and that it therefore could not be specifically enforced. On December 16, 1992, Gewin and Marx moved to amend their complaint. The trial judge treated the motion as a Rule 59(e), Ala.R.Civ.P., motion and set aside the final judgment. In March 1993, the plaintiffs added claims alleging breach of contract and promissory fraud. The complaint *Page 526 
was again amended in August 1993 to add claims alleging fraudulent suppression and conversion. The case was tried in March 1994, and the trial judge entered a directed verdict in favor of TCF on all of the plaintiffs' claims. Gewin and Marx moved for a new trial, but their motion was denied. They appeal.
 I.
Gewin and Marx first argue that the trial court erred in denying their motion for a new trial as to their breach of contract, promissory fraud, and fraudulent suppression claims. They contend that in support of each of those claims they produced the substantial evidence necessary to defeat TCF's motion for a directed verdict. They also argue that the trial court erred in ruling that the Statute of Frauds was applicable to their breach of contract claim and that the court erred in granting TCF's motions in limine relating to the lawsuit between TCF and Pan American and relating to expert testimony regarding the conditions of the commercial lending industry in 1991.
"In reviewing a trial court's ruling on a motion for a directed verdict, the appellate court must determine whether the party having the burden of proof has produced substantial evidence creating a question requiring resolution by the jury."Bell v. Sugarwood Homes, Inc., 619 So.2d 1298, 1300 (Ala. 1993). See Ala. Code 1975, § 12-21-12. However, in reviewing the record to determine whether a trial court properly directed a verdict, we "must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would be free to draw." Renfro v.Georgia Power Co., 604 So.2d 408, 411 (Ala. 1992). We address below the propriety of the trial court's directed verdict, as to each of the plaintiffs' claims against TCF.
 II.
We first consider whether Gewin and Marx presented substantial evidence in support of the promissory fraud claim. As the basis for this claim, Gewin and Marx allege that when they entered into the sales contract with TCF, which included an agreement that they could extend the contract deadline 60 days by paying TCF two nonrefundable amounts totalling $14,660, TCF intended not to perform in accordance with the terms of that agreement.
"In order to establish promissory fraud, a plaintiff must show: (1) a false representation; (2) of an existing material fact; (3) that is justifiably relied upon; (4) damage resulting as a proximate cause; and that, (5) at the time of the misrepresentation, the defendant had the intention not to perform the promised act and (6) that the defendant had an intent to deceive." Pinyan v. Community Bank, 644 So.2d 919,923 (Ala. 1994). The mere fact that TCF failed to perform as Gewin and Marx allege it promised it would is "insufficient by itself to prove a fraudulent intent." Pinyan, 644 So.2d at 924.
As proof of fraudulent intent, Gewin and Marx cite the testimony of a TCF employee who stated that when the parties entered the June 4, 1991, contract he was not sure Pan American would release TCF from the mortgage when the plaintiffs assumed it, but that he hoped Pan American would release TCF. Gewin and Marx also rely on deposition testimony from the attorney who represented TCF in the proposed transaction; he stated that in August and September 1991 it was his intention for Gewin and Marx to continue toward a closing of the sale even though it was his understanding that the June 4, 1991, contract had expired. Finally, Gewin and Marx cite other circumstantial evidence relating to a delay in the preparation of the closing documents and to a new proposed contract prepared by TCF, under which the extension payments the plaintiffs had made would not be credited against the purchase price.
In its order directing a verdict in favor of TCF, the trial court held that Gewin and Marx had presented "simply no evidence whatsoever" in support of their promissory fraud claim. Although we note that circumstantial evidence can be used to support an allegation of fraudulent intent, the evidence must be of such a quality that "the jury, as reasonable persons, may fairly and reasonably *Page 527 
infer the ultimate fact to be proved." Marshall Durbin Farms,Inc. v. Landers, 470 So.2d 1098, 1101 (Ala. 1985). See Pinyan, supra. Viewing the record in a light most favorable to the plaintiffs, we conclude that they failed to present substantial evidence that, when TCF entered the June 4, 1991, contract, or when it accepted the extension payments in July and August 1991, TCF intended not to complete the sale of the property if the financing contingencies were met and the plaintiffs tendered the sales price. Thus, the trial court properly directed the verdict in favor of TCF on this claim.
 III.
We next address whether the trial court erred in directing the verdict in favor of TCF on the plaintiffs' breach of contract claim. We must determine whether the plaintiffs presented substantial evidence that there was an enforceable contract between the parties. Gewin and Marx contend that the June 4, 1991, contract was amended or modified by later writings and that TCF breached the amended or modified contract. In response, TCF argues that the June 1991 contract expired by its own terms when the two time extensions elapsed and that no new contract was ever formed.
The initial question we must answer regarding the plaintiffs' breach of contract claim is whether the trial court was correct in applying the Statute of Frauds, Ala. Code 1975, § 8-9-2. The trial court ruled that there was insufficient evidence to show that the parties formed a second contract after the June 4, 1991, contract, because, the court said:
 "[T]he Statute of Frauds requires that any modification or amendment to a contract for the sale of real estate be signed by the party to be charged. Charles J. Arndt, Inc. v. City of Birmingham, 547 So.2d 397, 401 (Ala. 1989). Plaintiffs produced no document, containing the terms of the purported amendment, sufficient to satisfy the Statute of Frauds."
Citing Leisure American Resorts v. Knutilla, 547 So.2d 424
(Ala. 1989), Gewin and Marx argue that the Statute of Frauds is inapplicable where a jury finds that fraud occurred during the inception of the agreement. They argue that the trial judge prematurely applied the Statute of Frauds, because, they say, their promissory fraud claim should have gone to the jury and if the jury had found promissory fraud, then the Statute of Frauds would not apply. Although the plaintiffs argue a correct proposition of law, we have ruled that the trial court correctly directed the verdict on the promissory fraud claim. A jury could not have found fraud in the inception of the contract that would make the Statute of Frauds inapplicable to the contract at issue in this claim.
Under the Alabama Statute of Frauds, an agreement for the sale of land is void unless the agreement is signed by the party to be charged with the agreement. That requirement also extends to modifications of an existing contract. Charles J.Arndt, Inc., supra; Cammorata v. Woodruff, 445 So.2d 867
(Ala. 1983). The basis for the plaintiffs' breach of contract claim is a contract that Gewin and Marx say was formed when the June 4, 1991, contract was modified by a later series of letters. However, the letters relied upon by Gewin and Marx were not written directly to and from them and TCF. Rather, the letters are correspondence between representatives of the parties, and the plaintiffs have not shown that any of the representatives of TCF, the party now sought to be charged with the "modified contract," were authorized in writing by TCF to bind it to an agreement for the sale of land. See Cammorata, supra. Accordingly, it is clear that once the June 4, 1991, contract expired by its own terms, the later writings did not comply with the Statute of Frauds and thus did not constitute a new contract.
The plaintiffs cite Pinyan, supra, for the proposition that when there is conflicting evidence as to whether certain parties have formed a contract, the question becomes one for a jury to decide. However, in Pinyan, the Statute of Frauds was not found to be applicable and, thus, no signed writings were required in that case in order to create a valid contract. Moreover, it is clear from the letters relied upon by Gewin and Marx that both they and TCF did not intend the letters *Page 528 
to constitute a formal agreement. Of particular note are two letters written in September 1991. In a September 17 letter from Gewin and Marx to an attorney for TCF, they stated: "It is our intent to close this transaction upon the basic terms set forth herein. However, it is understood that until all necessary documents are prepared and entered into by all parties this proposal shall not be considered to be binding." (Emphasis added.) In a September 18 reply letter, the attorney concluded: "This letter is for discussion purposes only, andneither the buyers nor the seller shall be bound by the termsof this letter. Only definitive contract and closing documents shall be binding upon the parties." (Emphasis added.) It is clear that neither TCF nor Gewin and Marx ever intended to be bound solely by the series of letters the plaintiffs now rely upon to support a breach of contract claim. The trial court properly directed the verdict in favor of TCF on this claim.
 IV.
We must next determine whether the trial court erred in directing the verdict in favor of TCF on the plaintiffs' claim alleging fraudulent suppression. Gewin and Marx contend that TCF fraudulently suppressed the fact that at the time they were attempting to induce Pan American to release TCF from the mortgage on the property once they assumed it, TCF was involved in litigation with Pan American. The plaintiffs claim that if TCF had informed them that it was involved in litigation with Pan American, then they would not have thought Pan American might release TCF from the mortgage and they would not have entered into the sales contract with TCF and would not have paid it $14,660 in nonrefundable extension payments.
The legislature has provided: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances." Ala. Code 1975, § 6-5-102. We have held that the elements of a claim for fraudulent suppression are: "(1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) because of the confidential relationship of the parties or the circumstances of the case and (4) which caused injury as a proximate consequence." Applin v. Consumers Life Ins. Co., 623 So.2d 1094
(Ala. 1993), overruled on other grounds, Boswell v. Liberty Nat.Life Ins. Co., 643 So.2d 580 (Ala. 1994). Thus, mere silence as to a material fact is not fraud unless the defendant has a duty to disclose it. Mason v. Chrysler Corp., 653 So.2d 951
(Ala. 1995); Herring v. Parkman, 631 So.2d 996 (Ala. 1994);Richard Brown Auction Real Estate, Inc. v. Brown,583 So.2d 1313 (Ala. 1991); King v. National Foundation Life Ins. Co.,541 So.2d 502 (Ala. 1989).
This Court has consistently held that where both parties to a transaction are knowledgeable, are capable of protecting their own interests, and are dealing at arms's length, no duty to disclose particular information exists unless the information is actually requested. Bama Budweiser ofMontgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238
(Ala. 1992); Norman v. Amoco Oil Co., 558 So.2d 903 (Ala. 1990);Duke v. Jones, 514 So.2d 981 (Ala. 1987); Trio Broadcasters,Inc. v. Ward, 495 So.2d 621 (Ala. 1986); Bank of Red Bay v.King, 482 So.2d 274 (Ala. 1985). Gewin and Marx are very knowledgeable and experienced in commercial real estate transactions. Each makes his living by purchasing, leasing, and managing various types of real estate, and together they possess more than 40 years of experience in the real estate investment business. We conclude that Gewin and Marx were sophisticated businessmen dealing at arm's length with TCF, that they were not in a position of unequal bargaining power, and, therefore, that TCF had no affirmative duty to disclose to them that it was involved in litigation with Pan American. SeeBama Budweiser, supra; Norman, supra; Duke, supra; TrioBroadcasters, supra; King, supra. Moreover, it is uncontested that the plaintiffs never asked TCF whether it was involved in litigation or any business dispute with Pan American.
Still, Gewin and Marx argue that this case is controlled byInterstate Truck Leasing, Inc. v. Bender, 608 So.2d 716
(Ala. 1992), *Page 529 
where this Court ruled, in regard to a real estate transaction, that the defendant had had a duty to disclose to the plaintiff the fact that the State was proceeding with a condemnation action against that property. Gewin and Marx emphasize that inBender this Court recognized a duty to disclose even though, they argue, that case involved a sophisticated plaintiff. However, Bender is distinguishable from this case. We recognized a duty to disclose in Bender because the material fact not disclosed in that case, the impending condemnation action, could not have become known to the plaintiff unless it was disclosed by the defendant. 608 So.2d at 720. The only possible evidence of the condemnation action available to the plaintiff was the existence of a "project number" on a generic State Highway Department map given to the plaintiff by the defendant. Id. This Court concluded that the plaintiff "could not have discovered the impending condemnation action through due diligence and, thus, was placed in a position of unequal bargaining power during negotiations for the lease." Id. Thus, it was the nature of the fact involved in Bender that created the defendant's duty to disclose it in that particular case.
The litigation between TCF and Pan American had been ongoing for two years in the federal district court in Mobile when the plaintiffs began their lengthy negotiations with TCF, which lasted several months. The existence of the litigation was a matter of public record. See Holland v. Eads, 614 So.2d 1012
(Ala. 1993). Thus, experienced real estate investors, like Gewin and Marx, could have discovered it by the exercise of due diligence. See Richard Brown Auction Real Estate, Inc. v.Brown, 583 So.2d 1313 (Ala. 1991); DeWitt v. Long,519 So.2d 1363 (Ala.Civ.App. 1987). The trial court correctly directed the verdict in favor of TCF on the fraudulent suppression claim.
 V.
Because the directed verdict was proper as to each of the plaintiffs' claims, the denial of the plaintiffs' new trial motion was also proper. The trial court's judgment in favor of TCF is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.