266 So.2d 773

Geneva M. UNDERWOOD

v.

HOLY NAME OF JESUS HOSPITAL, etc., et al.

7 Div. 906.

Supreme Court of Alabama.

Aug. 17, 1972.

Rehearing Denied Sept. 28, 1972.

Coleman & Hancock, Birmingham, for appellant.

Inzer, Suttle, Inzer & Pruett, Gadsden, for appellee Missionary Servants of The Most Blessed Trinity, a Corporation.

Dortch, Wright & Cobb, Gadsden, for appellee Dr. Grady Ford.

MERRILL, Justice.

Plaintiff, Mrs. Geneva M. Underwood, filed suit against defendants, Holy Name of Jesus Hospital and Dr. Grady Ford, for negligence in X-raying and treating a fractured wrist. After plaintiff presented her evidence, the trial judge granted defendants' motion to exclude the evidence and discharged the defendants. Plaintiff appeals from that judgment.

The amended complaint consisted of Counts One and Three when the trial began. Count One charged that "the defendant, 'hospital', negligently X-rayed, or failed to X-ray Plaintiff's right arm and wrist; and that the defendant, Dr. Grady Ford, negligently interpreted X-ray or X-rays

made of Plaintiff's right wrist and arm; and plaintiff avers that as a proximate consequence of the combined and concurring negligence of the defendants, the Plaintiff was damaged and injured as follows: * * *." Count Three charged that for a valuable consideration the hospital agreed to X-ray plaintiff's arm properly and that Dr. Ford, for a valuable consideration, agreed to properly interpret the X-ray and that "the defendant 'hospital' breached said agreement in that they failed to properly X-ray her arm, and the defendant, Dr. Grady Ford, breached said agreement in that he failed to reasonably or properly diagnosis [sic] the plaintiff's X-ray or X-rays made by the defendant 'hospital'; and as a proximate consequence of the combined and concurring breach of said agreement by the defendants as aforesaid, the plaintiff was injured and damaged as follows: * * *."

After the plaintiff had concluded the presentation of her evidence, the complaint was again amended by adding Count Four which charged that "said hospital negligently failed to advise the treating physician of plaintiff's injury and location of said injury, or negligently failed to order X-rays of the site of plaintiff's injury, and as a proximate result thereof the X-ray department failed to X-ray the portion of plaintiff's arm which would furnish the proper view or views of plaintiff's injury for the purpose of interpretation and plaintiff avers that the defendant Dr. Grady Ford, at said time and place as aforesaid, undertook to interpret for plaintiff's treating physician said X-ray of plaintiff's injury and plaintiff avers that the defendant Dr. Grady Ford negligently failed to interpret X-rays of plaintiff's injury and negligently failed to advise or report to the treating physician the fracture of or possible fracture of plaintiff's right wrist and plaintiff avers that as a proximate consequence of the combined and concurring negligence of the defendants plaintiff's physician was not properly advised so as to provide proper care and treatment for plaintiff's injury, and as a proximate consequence thereof

plaintiff was injured and damaged as follows: * * *."

The trial court announced that demurrers to Count Four were overruled and when the defendants moved to exclude the evidence as to Counts One, Three and Four, the trial court granted the motion.

After summarizing the three counts, appellant concluded her "Statement of the Case" in brief as follows:

"The appellant's theory of her complaint alleged negligence of the appellee hospital was in x-ray of *plaintiff's forearm* when the treating physician had a preliminary diagnosis of questionable fracture of the *wrist* and asked for a *wrist x-ray*. The doctor, appellant contends, negligently interpreted said x-ray, reporting no evidence of fracture or dislocation on his initial examination. The appellees split all fee between them, with two-thirds to the hospital and one-third to the doctor who supervised the hospital's x-ray facilities and it was the appellant's theory that the appellees were in a joint adventure in the operation of the x-ray department."

"A joint adventure is a legal relation of recent origin created by the American courts and is generally described as an association of persons to carry out a single business enterprise for profit. 'Joint enterprise,' 'joint venture,' and 'syndicate' are terms similar to 'joint adventure' and are sometimes used interchangeably with it." 48 C.J.S. Joint Adventures § 1, p. 801. See also 46 Am.Jur., Joint Ventures, § 1, pp. 21–22.

"As a general rule, in order to constitute a joint adventure there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained." 48 C.J.S. Joint Adventures § 2a., p. 809; Great Atlantic & Pacific Tea Co. v. Gilley, 28 Ala.App. 360, 184 So. 286.

The reason for the advancement by appellant of the joint adventure theory is that the negligence of one participant in the joint venture or enterprise may be imputed to another participant so as to render the latter liable for an injury sustained by a third person as a result of the negligence. 46 Am.Jur.2d, Joint Ventures, § 58, p. 78.

We have held that each joint adventurer is liable to contribute ratably for the losses resulting from the adventure, Murphy v. Craft, 226 Ala. 407, 147 So. 176; and that a joint adventure, while not identical with a partnership, "is governed by the same rules of law." Saunders v. McDonough, 191 Ala. 119, 67 So. 591.

Dr. Ford was in charge of the X-ray department of the hospital and he was the senior partner of the one group of radiologists that worked at the hospital in 1969. Dr. Ford's fees amounted to one-third of the revenues collected in the radiological department. He received this pay whether or not the department was operated at a profit. There is no evidence that Dr. Ford has a proprietary interest in the real or personal property involved in the function of this department or that the parties had agreed to share in the losses if any occurred.

These reasons are sufficient to show that some of the elements of a joint adventure or joint venture are absent in the relation of Dr. Ford and the hospital and the allegations do not sufficiently allege a joint venture nor is the evidence sufficient to support such a finding. Therefore, we must reject the contention of a joint adventure. See 46 Am.Jur.2d, Joint Ventures, § 66. Pleading.

The events which are the foundation for this suit may be summarized as follows: On the evening of April 8, 1969, Mrs. Underwood slipped and fell to the floor at her home and, by morning, she had pain in her shoulder, arm and wrist. She arrived at the hospital the next morning at approximately 6:00 o'clock. She was examined by the nurse in the emergency room, answered some personal data questions and she requested the nurse to call Dr. Burns, her regular physician. She was informed that Dr. Burns had been called and the nurse told her that an X-ray would soon be taken. No X-ray could be taken at the hospital without the authorization of a physician, and the X-ray order form bore the name of Dr. Scott Vance, who had formerly been her doctor. The X-ray order authorized an X-ray of the "rt. forearm & shoulder." Later in the day, she was treated by Dr. Burns, her wrist was wrapped with an ace bandage. She was given some anti-pain pills and she left the hospital. She continued to suffer pain but she did not see Dr. Burns again until April 24, at which time he sent her back to the hospital for an X-ray of the wrist. This X-ray revealed a fracture of the wrist and a cast was applied.

We come now to the question of the charge of concurrent negligence of the hospital and Dr. Ford. Under our cases, in an action against two defendants for damages allegedly caused by the combined or concurring negligence of the defendants, it is not necessary to show negligence of both defendants in order for recovery to be had against one shown to be negligent. Chesser v. Williams, 268 Ala. 57, 104 So.2d 918, and cases there cited.

We first consider the charge that the hospital was negligent. The main thrust of appellant's argument is that the hospital did not comply with Dr. Burns' order for an X-ray of the wrist. This is based upon a diagnosis Dr. Burns had already written on a hospital admission form. Under a space for "Diagnosis" Dr. Burns wrote "? Frac. Wrist—Sprain Wrist (XRay Finding —neg for fracture)" and on that same form in the X-ray section were the words: "X-

ray rt. forearm & shoulder." The only order for X-ray on April 8 for Mrs. Underwood was one for "X-ray rt. forearm & shoulder" and the findings of Dr. Ford were: "4/8/69 (R) FOREARM: No evidence of a fracture or dislocation is seen. (R) SHOULDER: No evidence of a fracture or dislocation is seen. HGF/kw" and signed "H. G. Ford Radiologist."

It is undisputed that Mrs. Underwood's arm and shoulder had already been X-rayed on the telephone order of Dr. Vance before Dr. Burns ever saw Mrs. Underwood on April 8, and Dr. Burns testified that he had seen those X-rays and saw no fractures. It was also undisputed that all X-rays are taken on orders of a physician, and in the event another X-ray is needed, that matter is up to the attending physician, and that a radiologist never treats a patient.

The testimony is also undisputed that the ordered X-rays of the arm and shoulder were good, plain and not defective. It is undisputed that the X-ray machine is centered into the center of the portion of the patient's anatomy to be X-rayed, and that the "cone down" effect of an X-ray will leave the outside edges of the pictures somewhat distorted. The X-rays taken by the only order received by the hospital was one of the right shoulder of the patient and two of the right forearm. In the forearm pictures, the wrist was at the edge of the two pictures, but they were evidently satisfactory to Dr. Burns, who not only saw and inspected them, but he saw no fracture and did not order an X-ray of the wrist until April 28.

■ Ordinarily, a trial court does not grant a motion to exclude the evidence, and we had said that the trial court will never be put in error for refusing a motion to exclude the evidence of the plaintiff, nor will it be placed in error for granting the motion if the evidence does not make out a prima facie case for the plaintiff. Cooper v. Providence Hospital, 272 Ala. 283, 130

So.2d 8; Riley v. Riley, 257 Ala. 636, 60 So.2d 432, and cases there cited.

■ The measure of duty owed by a hospital to a patient is that degree of care, skill, and diligence used by hospitals generally in the community and by the express or implied contract of the undertaking. Cooper v. Providence Hospital, supra; Mobile Infirmary v. Eberlein, 270 Ala. 360, 119 So.2d 8.

■ Ordinarily, in a malpractice case, proof as to what is or is not proper practice, treatment and procedure, can be established only by expert medical evidence. In such a case lack of expert testimony results in lack of proof of negligence and such proof is essential to establish a plaintiff's case. Parrish v. Spink, 284 Ala. 263, 224 So.2d 621; Blair v. St. Margaret's Hospital, 285 Ala. 636, 235 So.2d 668.

Here, the patient, Mrs. Underwood, came to the emergency room of the defendant hospital on April 8 complaining of a sore arm and shoulder. Dr. Vance telephoned an order for a right shoulder and forearm X-ray which the hospital took and there is no criticism or evidence that these X-rays were deficient in any respect. Dr. Burns, the attending physician, who saw his patient after the X-rays were taken, ratified the request for X-ray by signing it, and he did not order or request a *wrist* X-ray until April 25 and those X-rays were also good X-rays. Dr. Burns testified that Mrs. Underwood "complained of pain in her right shoulder" and that he looked at the X-rays, as he always did, after they had been taken.

Under plaintiff's own evidence, there was no evidence to support the allegations charging the hospital with either distinct acts of negligence or combined concurrent negligence which was the proximate cause of appellant's injuries. Therefore, the trial court did not err in granting the hospital's motion to exclude plaintiff's evidence.

■ We come now to the charges against the other defendant, Dr. Ford. The thrust of the charges are that Dr. Ford failed to properly read the X-ray of April 8 in that he failed to detect a fracture of the right wrist and that wrist was shown to be fractured in the X-rays taken April 25.

The undisputed evidence is that the only X-rays ordered for Mrs. Underwood on April 8 were by telephone order from Dr. Vance for "X-ray rt. forearm & shoulder." There is no evidence that Dr. Ford saw or talked with either the patient or Dr. Burns either prior to the taking and reading of the X-rays of April 8, or at any time prior to her dismissal from the hospital by Dr. Burns. Dr. Ford had his findings typed on the order (previously quoted in this opinion) that no evidence of a fracture or dislocation was seen either in the forearm or the shoulder. It was also undisputed that a proper X-ray of the wrist would be "a central ray beam pointed toward the wrist." But there is no evidence that Dr. Ford was ever told, informed or requested to read the X-rays taken on April 8 for a fracture of anything other than the right forearm and shoulder. It is undisputed that his findings as to the forearm and shoulder were correct. So that narrows the question to whether Dr. Ford was negligent in failing to see a fracture, if there was one, in the wrist which was at the edge of the pictures of the forearm and admittedly in a distorted area of the pictures of the forearm X-rays.

After the X-rays of the wrist had been taken on April 25, Dr. Ford made the following notation under his findings on the order for the X-ray of the right forearm and shoulder on April 8:

"4/25/69

These films were reviewed after seeing the fractured radius reported on 4-25-69 and there was still no definite evidence of a fracture seen. There is an indefinite line across the radius just proximal to the wrist joint and there is no angulation or displacement of the fragments recognized. There is no fragmentation on the original film. This fracture was thought to have occurred between the 4-8-69 and the 4-25-69 films. HGFmac

"/s/ H. G. Ford"

The plaintiff introduced a letter written by Dr. Lonnergan, an orthopedic surgeon, and took the testimony of two doctors, Azar and Gillman, who were experts in radiology. When asked about whether they could see evidence of a fracture of the wrist in the forearm X-rays, Dr. Lonnergan wrote "Diagnosis of this fracture is not conclusive from the x-ray films." Dr. Azar testified, "That line is so ill defined I don't think I would order anything more," and "I don't see anything definite that I'd still call a fragment after looking at it this way." Dr. Gillman testified, "I can't say for sure."

Dr. John Gonzales, a radiologist in Birmingham to whom counsel for appellant had shown the X-rays of April 8 and April 25, testified that the X-ray of April 8 is of the forearm, but that he could see part of a hairline fracture across a bone in the wrist. He further testified that had he made a written report of his findings from reading that X-ray, he would have reported that there was evidence of a minimal fracture defect involving the distal end of the radius and "characterized by a short hairline type of fracture across the same portion of the bone, and alteration of the articulating plane of the radius in relation to the rest of the wrist." He also stated that the X-ray of April 25 was of the right wrist and is a different view from the April 8 X-ray of the forearm, but the April 8 X-ray was sufficient to show the fracture of the wrist; and that she could have fallen after April 8 and that could have accounted for the difference in the X-rays of April 25.

Dr. Ford had evidence from plaintiff's expert witness to support his finding that "This fracture was thought to have occurred between the 4–8–69 and the 4–25–69 films." Dr. Gillman testified: "There is a definite change. I do not know the mechanism of the change at all. There is a definite change between the pictures."

Dr. Lonnergan: "She certainly sustained additional injury, to have produced the displacement indicated on the films made April 25, 1969," and "I don't think anything could have done it except additional injury." Dr. Azar: "This other fracture wouldn't have happened unless there was further injury to it (the wrist) to cause it . . . " Dr. Burns: "Well, it seems to me like she would have to have additional trauma to the picture causing this second finding," and he further testified, that assuming that there was a hairline fracture on April 8, and assuming that the arm was kept immobile and not used, and had no trauma or injury to it, he thought it would be impossible for the hairline fracture to have produced the fracture that is shown by the April 25 film.

In Moore v. Smith, 215 Ala. 592, 111 So. 918, the late Somerville, J. (the father of the present Somerville, J.), writing for the court said:

" 'A civil action for malpractice against a physician and surgeon may be sustained on proof of a failure to exercise reasonable and ordinary care, diligence and skill in respect to the duty so assumed and undertaken as physician and surgeon —such care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice, ordinarily employ and exercise in a like case, Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Carpenter v. Walker, 170 Ala. 659, 54 So. 60, Ann.Cas.1912D, 863; Shelton v. Hacelip, 167 Ala. 217, 51 So. 937; McDonald v. Harris, 131 Ala. 359, 31 So. 548; 30 Cyc. 1575; 14 Am. & Eng. Ency. Law (1st Ed.) 76,

78.' Talley v. Whitlock, 199 Ala. 28, 73 So. 976; 21 R.C.L. 381, § 27.

"Obvious corollaries to this rule of liability are that a physician or surgeon, unless by express undertaking, does not warrant a cure or a successful result, and is not liable for an honest mistake or error of judgment in making a diagnosis, or prescribing a mode of treatment, where the proper course is subject to reasonable doubt. Barfield v. S. H. Infirmary, 191 Ala. 553, 68 So. 30, Ann.Cas.1916C, 1097; 21 R.C.L. 391, § 35."

This principle is restated in Parrish v. Spink, 284 Ala. 263, 224 So.2d 621, where it was also said that a "showing that an unfortunate result has followed does not itself shift the burden of proof. The complainant patient must still show negligence."

Here, Dr. Ford had read the X-rays of the right shoulder and forearm and reported that he had seen no fractures in either and it is not contended that there were. But assuming that a hairline fracture was visible in the distorted area of the wrist and should have been included on Dr. Ford's report of April 8, the worst that can be said of his original report is that he made an honest mistake of judgment on a matter which was "subject to reasonable doubt." In that posture there was no liability according to Moore v. Smith, supra, and the authorities there cited.

It was undisputed that it is not the function of a radiologist to provide treatment for a patient, and that the treating physician, not the radiologist, decides what X-rays are needed. The treating physician, Dr. Burns, did not order an X-ray of the wrist until April 25, and he personally examined the X-rays of April 8 and did not then order any more, being satisfied that there was no fracture, and he told Mrs. Underwood on April 8 that her wrist was probably sprained and not fractured. Dr. Burns did not talk to Dr. Ford about the

X-rays nor inquire of anyone why there was no X-ray of the wrist.

There was no evidence that Dr. Ford did not exercise that degree of care, skill and diligence used by physicians in the same general line of practice in the Gadsden area. All of the testimony came from the plaintiff and her witnesses for whom she vouched. Therefore, without the essential element of proof as to breach of duty by the defendant Ford, the appellant failed to make out a prima facie case of negligence as alleged in the complaint, and was not entitled to have the evidence submitted to the jury.

We are aware that we have noted in this opinion two questions of fact which would ordinarily be determined by a jury, (1) whether or not there was a hairline fracture of the wrist shown on the April 8 X-ray of the patient's forearm, and (2) whether plaintiff received additional injury to her wrist between April 8 and April 25. However, there had to be some proof of Dr. Ford's negligence before these matters became pertinent.

In Watterson v. Conwell, 258 Ala. 180, 61 So.2d 690, a malpractice case, this Court said:

"And that where evidence is equally consistent with either the existence or nonexistence of negligence, the issue should not be submitted to the jury, and that the party who affirms negligence has under such circumstances failed to establish it. Stowers v. Dwight Mfg. Co., 202 Ala. 252, 80 So. 90."

We are constrained to hold that the trial court did not err in granting the motion to exclude the evidence as to Dr. Ford since a prima facie case had not been presented.

Affirmed.

HARWOOD, BLOODWORTH, MADDOX and SOMERVILLE, JJ., concur.