Lathan Roof America, Inc. (hereinafter "Roof America"), appeals the Mobile Circuit Court's judgment entered on a jury verdict in favor of Frederic Hairston, stemming from Hairston's claim brought under the Employer's Liability Act, Ala. Code 1975, §§ 25-6-1 to -4. Roof America contends that at the time of his injury Hairston was an employee of The Lathan Company, not Roof America, and that, therefore, his sole remedy was against The Lathan Company and was limited to workers' compensation benefits. Roof America claims that the trial court erred in refusing to grant its motion for a judgment as a matter of law based on the insufficiency of the evidence at trial indicating that Hairston was an employee of Roof America.[1] Roof America also claims that the trial court erred in refusing to allow Roof America to assert the defenses of contributory negligence and assumption of the risk. We affirm.
Except where otherwise indicated, the following facts are undisputed. The Lathan Company, a commercial/industrial roofing company, is one of two companies owned by Jerry Lathan; the other company is Roof America, which handles smaller, residential roofing projects. Jeff Barnacle and Jerry Lathan's brother, Joe Lathan, are vice presidents of both companies.
In early August 1997, The Lathan Company hired Frederic Hairston as a superintendent to supervise its construction of an office building. Hairston had several years of experience in the construction business. Hairston's employment with The Lathan Company was to last only as long as it took to complete the office building. In his role as a construction superintendent, Hairston was to hire and supervise subcontractors and to make sure that equipment and materials were ordered and delivered to the construction site. *Page 264 
On August 28, 1997, Roof America entered into a contract with the Dauphin Surf Club ("the Surf Club") to reroof part of the Surf Club's condominium complex. When the Surf Club project began (in late September or early October 1997), Roof America had only one employee: Anthony George. However, George quit during the first week of October, and the responsibility for Roof America's various projects fell to Jeff Barnacle, who began to use The Lathan Company employees in order to continue servicing Roof America projects. Roof America reimbursed The Lathan Company for any time its employees spent working on a Roof America project.
After George quit, Hairston began performing various tasks at the Surf Club. Hairston approached Rich Jensen, a subcontractor, about performing some roofing work at the Surf Club project, and Jensen eventually agreed to do the work. According to Jensen, his agreement was with Hairston, and, while Jensen eventually met Jerry Lathan and Joe Lathan to work out the details, Jensen had already started his work before he met the Lathans. At his meeting with the Lathans (at which Hairston was present), the parties decided that Hairston would make sure that the materials for the roofing work were provided and that if any problems arose with the roofing project Jensen was to call Hairston. Furthermore, Jensen testified that Hairston was at the Surf Club site on a regular basis and that, while Jensen performed the roofing work, he and Hairston were in continual contact.
On October 31, 1997, Hairston was preparing to take a load of materials to the Surf Club site when a roof leak was reported at the site. According to Hairston, Jeff Barnacle told Hairston to "handle it." Hairston attempted to contact Jensen but was unable to reach him. Hairston then went to the site, found the leak, collected some materials, and ascended the roof in an attempt to fix the leak. It was raining at the time, and Hairston slipped, fell off the roof, and suffered severe damage to one of his feet, as well as various related complications.
The material factual dispute between the parties concerns Hairston's employment status at the time of his injury. Sometime in October 1997, Joe Lathan had had a conversation with Hairston that related to the possibility of Hairston's continued employment once the office building Hairston had been hired to supervise construction of was completed. Hairston claims that he was offered Anthony George's position with Roof America and that he was told if he took the position he would be in charge of the Surf Club project. However, Roof America claims that Hairston was not offered any position with Roof America; rather, it argues, Hairston was an employee of The Lathan Company and The Lathan Company sent him to perform some tasks at the Surf Club.
Hairston sued Roof America, The Lathan Company, Jerry Lathan, Joe Lathan, and Jeff Barnacle, asserting claims against all defendants underboth the Employer's Liability Act (alleging negligence and wantonness) and under the Alabama Workers' Compensation Act, Ala. Code 1975, §§25-5-1 et seq. Roof America and The Lathan Company filed a motion to dismiss. After a hearing, the trial court dismissed all claims against The Lathan Company, Joe Lathan, and Jeff Barnacle, as well as the workers' compensation claim against Jerry Lathan and Roof America. The case went to trial on the negligence and wantonness claims against Roof America and Jerry Lathan brought under the Employer's Liability Act.
At the end of Hairston's case-in-chief, the trial court granted Jerry Lathan's motion for a judgment as a matter of law. *Page 265 
However, the trial court denied Roof America's motion for a judgment as a matter of law submitted at the end of Hairston's case-in-chief and granted Roof America's similar motion filed at the close of all of the evidence as to Hairston's claim alleging wantonness under the Employer's Liability Act. The trial court allowed the case to go to the jury on the remaining negligence claim against Roof America under the Employer's Liability Act. The jury returned a verdict in favor of Hairston for $500,000,[2] and the trial court denied Roof America's postverdict motion for a judgment as a matter of law, or in the alternative, for a new trial.
 A.
Roof America argues that the trial court erred in refusing to grant Roof America's motions for a judgment as a matter of law submitted both at the close of all the evidence and after the verdict had been rendered. Roof America contends that its motions should have been granted because, it says, Hairston failed to prove an essential element of his Employer's Liability Act claim: that he was an employee of Roof America.
We recently summarized our procedure for reviewing a ruling on a motion for a judgment as a matter of law as follows:
 "`The standard of review applicable to a ruling on a motion for [a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying [that] motion. Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.
"`. . . .
 "`. . . In ruling on a motion for a [judgment as a matter of law], the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been "substantial evidence" before the jury to create a question of fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."'"
Congress Life Ins. Co. v. Barstow, 799 So.2d 931, 936 (Ala. 2001) (quoting American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67
(Ala. 1993)). The question, therefore, is whether, when the evidence is examined in the light most favorable to Hairston, there was "substantial evidence" before the jury to create a question of fact as to Hairston's employment status with Roof America. We answer this question in the affirmative.
Several factors are relevant in determining whether an individual is an employee of another. Obviously, one of the most important factors is whether there is evidence of an offer of employment and an acceptance of that offer. Another important factor is "the degree of control the alleged [employer] retains over the alleged [employee]." Gossett v. TwinCounty Cable T.V., Inc., 594 So.2d 635, 639 (Ala. 1992) (also stating that "`[i]t is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employee — master and *Page 266 
servant.'" (quoting Hodges Co. v. Albrecht, 288 Ala. 281, 284,259 So.2d 829, 830 (1972))). Other factors include "the method by which one receives payment, the furnishing of equipment, . . . and whether one had the right to terminate the employment of the worker." Boyd v. HinkleRoofing Sheet Metal, Inc., 596 So.2d 947, 949 (Ala.Civ.App. 1992). Other factors are certainly relevant. For example, the exercise of — or the failure to exercise — prerogatives inherent in the alleged employee status give some indication as to whether a person actually holds (or believes that he or she holds) that status.
We must determine whether "substantial evidence" was presented from which a jury could reasonably have inferred that Hairston's relationship to Roof America was one of employee to employer.
Hairston testified that, soon after Anthony George quit, Joe Lathan approached Hairston about taking over George's position with Roof America. According to Hairston, Joe Lathan stated that Lathan realized that the supervision of the office-building construction did not occupy a great deal of Hairston's time and that this new position would be a chance to continue working after the office-building construction project was completed. Hairston testified that Hairston knew that Roof America was in dire need of someone to take over the Surf Club project because of George's leaving, time constraints, and labor problems.
Hairston also testified that he spoke with Jerry Lathan, Joe Lathan, and Barnacle when he said he accepted the job (around the second week in October 1997) and, while accepting the job, Hairston confirmed that his salary would not change from what he was making as the supervisor of the office-building construction. He testified that the job came with other "perks," mainly longevity with the company and the ability to charge gasoline (two tanks per week) to a company account.[3]
Roof America admits that Joe Lathan had a conversation with Hairston about continued work, but it denies that Hairston was ever offered a position with Roof America. However, Joe Lathan testified at trial that, although he did not remember offering Hairston the job, it was not unreasonable that he would have offered him the position, given the circumstances. Jeff Barnacle also testified that, while he did not know whether Hairston had been offered the job, it was nonetheless possible that he had been.
With regard to Hairston's actual exercise of the prerogatives of the alleged employment with Roof America, the testimony of Rich Jensen, the roofing subcontractor who was working on the Surf Club project, is especially relevant. Although Jensen testified that he did not know whether Hairston was working for The Lathan Company or for Roof America, Jensen testified that he assumed Hairston was the Roof America superintendent based on their continual working relationship at the Surf Club and on Hairston's apparent authority over the project. James Delchamps, the manager of the Surf Club, testified that he believed, based on his observations of Hairston at the Surf Club site, that Hairston was the new Roof America supervisor for the Surf Club project. *Page 267 
The issue of control (including the related "right to terminate") in this case does not prove to be very helpful in determining whether Hairston was an employee of Roof America. In a sense, control in this case is undisputed. Jerry Lathan, the owner and president of both The Lathan Company and Roof America, testified that Joe Lathan and Jeff Barnacle were vice presidents of both The Lathan Company and Roof America. Furthermore, after Anthony George's departure, Jeff Barnacle was handling the Roof America projects. Because the individuals who, as principals in The Lathan Company, undisputedly had control over Hairston in his capacity as an employee of The Lathan Company were the same individuals who reasonably could have control over Hairston as a Roof America employee, the issue of control is not determinative.
Roof America relies to a great degree on the method by which Hairston received payment as evidence indicating that Hairston was not an employee of Roof America. It is undisputed that Hairston received his paychecks from The Lathan Company, not from Roof America. Also, Hairston received his "W-2 Wage and Tax Statement" forms from The Lathan Company. However, the method of payment is not conclusive of the issue of Hairston's employment status with Roof America; rather, it is but one major element that the jury must consider. In this case, the impact on a jury of the evidence presented by Roof America could reasonably be tempered by (1) Hairston's testimony that, at the time he was injured, he had been in his new position for only about two weeks and was in the middle of a pay period; (2) the testimony at trial that Hairston's new position with Roof America would not change his salary, and (3) the close interconnection between Roof America and The Lathan Company.
In addition, the jury heard evidence at trial indicating that The Lathan Company did not immediately treat Hairston as an employee of The Lathan Company for purposes of workers' compensation benefits. While The Lathan Company did file a workers' compensation claim for Hairston, that claim was not filed until December 27, 1999, over two years after Hairston's fall and after this litigation was commenced. Section 25-5-4, Ala. Code 1975, requires an employer to report an employee's injuries within 15 days of the incident causing the injuries. Given the above, we conclude that there was "substantial evidence" at trial from which the jury could have found that Hairston was an employee of Roof America. Viewing the evidence in the light most favorable to Hairston, as we must, there is "evidence of such weight and quality" that fair-minded jurors could have reasonably inferred the existence of that alleged fact. Barstow, supra, 799 So.2d at 936. Therefore, because Roof America's arguments on appeal as to its motions for a judgment as a matter of law rest on the sufficiency of the evidence regarding Hairston's employment status with Roof America, we must hold that the trial court did not err in denying those motions.
 B.
Roof America also argues that the trial court erroneously refused to give the jury Roof America's requested instructions on the defenses of contributory negligence and assumption of the risk. Roof America argues that these defenses are available in claims brought under the Employer's Liability Act; Roof America cites several cases in which this Court has appeared to agree with that proposition. See McCord v. McCord,575 So.2d 1056, 1057 (Ala. 1991) (stating that "[w]e acknowledge that contributory negligence is a defense under the *Page 268 
Employer's Liability Act" (citing Parham v. Taylor, 402 So.2d 884 (Ala. 1981))); Lee v. Shrader, 502 So.2d 741, 743 (Ala. 1987) (stating that "[c]ontributory negligence is a defense under § 25-6-1" (citingParham and Johnson v. Johns Serv. Funeral Parlor, Inc., 240 Ala. 231,198 So. 357 (1940))); Parham, 402 So.2d at 887 (citing no cases but stating that, in the context of suits against one's employer, "[f]rom the cases we have reviewed it is clear that the defenses of contributory negligence and assumption of risk are available when appropriate");Johnson, 240 Ala. at 234, 198 So. at 360 (indicating that the defense of contributory negligence could be applicable in a case brought under the Employer's Liability Act).
These cases do not represent independent analyses of the question whether the defenses of contributory negligence and assumption of the risk are available under the Employer's Liability Act. In fact, no real analysis of the question is to be found in these decisions; rather, the decisions merely rely upon the conclusory statements made in the other cases (McCord and Lee rely on Parham; Parham appears to rely on cases such as Johnson). We cannot, however, continue that reliance in this case because that reliance is founded upon a misstatement of law. None of these decisions mentions Ala. Code § 25-5-33.
Section 25-5-33 provides that "[t]he provisions of Section . . .25-5-32 shall apply to . . . personal injuries arising under . . . [the Employer's Liability Act]." Ala. Code 1975, § 25-5-32 provides as follows:
 "In all cases brought under this article, it shall not be a defense:
 "(1) That the employee was negligent, unless and except it shall also appear that such negligence was wilful or that such employee was guilty of wilful misconduct as defined in Section 25-5-51.
 "(2) That the injury was caused by the negligence of a fellow employee.
 "(3) That the employee had assumed the risks inherent in or incidental to the work, or arising out of his employment, or arising from the failure of the employer to provide and maintain safe premises and suitable appliances, which grounds of defense are hereby abolished."
In short, § 25-5-32 removes the defenses of contributory negligence and assumption of the risk. Because § 25-5-33 expressly makes the provisions of § 25-5-32 applicable to claims arising under the Employer's Liability Act, these defenses are therefore not available with regard to such claims. See Johnson v. Brinker, 289 Ala. 240, 243,266 So.2d 851, 854 (1972) (recognizing that the provisions of § 25-5-32
are applicable to the Employer's Liability Act). To the extent that our previous decisions, such as McCord, Lee, Parham, and Johnson, have not recognized the effect of § 25-5-33, they are overruled.
The trial court did not err when it refused to instruct the jury on the defenses of contributory negligence and assumption of the risk.
Based on the above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
Moore, C.J., and Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] Roof America also argues that the trial court erred in allowing Hairston's claims under the Employer's Liability Act to proceed to trial. However, given our disposition in this case, we need not reach this issue.
[2] Roof America does not challenge the jury's verdict on the ground that it is excessive.
[3] Undisputed evidence introduced at trial indicated that from the time Hairston was hired by The Lathan Company (in early August 1997) until he alleges he took the position with Roof America (in mid-October 1997), Hairston charged gasoline using a company account only twice (September 8 and 18). Beginning October 16, however, Hairston's gasoline charges were much more frequent, occurring on October 16, 17, 20, 25, and 27. *Page 269