[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 63 
The plaintiff below, James Flowers, appeals from the trial court's summary judgment in favor of the defendant, Lou Pope, in this action alleging negligence, breach of contract, and fraud.[1] We affirm.
 Facts and Procedural History
In the fall of 2002, Pope contacted Terry Gordon, who was in the business of cutting timber, about cutting timber on Pope's property. Gordon and Pope entered into an oral agreement pursuant to which Gordon would cut timber on Pope's property and sell the timber to a timber company, and Gordon and Pope would split the proceeds from the sale equally. Pope also agreed to help Gordon with the cutting when he was not working at his regular job and on weekends. Gordon and Pope did not discuss whether Gordon would hire workers to complete the job, but Gordon testified that Pope knew that he would be hiring labor to help with the cutting.
Gordon contacted Flowers to ask him if he would be interested in timber-cutting work. Gordon took Flowers to multiple properties where Gordon had agreed to cut timber for the property owners. When Gordon took Flowers to Pope's property, they discussed the work to be completed on that property, what Gordon would pay Flowers for his labor, and insurance coverage. *Page 64 
On January 6, 2003, Gordon and Flowers began cutting timber on Pope's property. Gordon and Flowers used Pope's tractor to haul the timber, but Gordon provided chainsaws and other tools necessary for cutting the trees. Flowers was injured while hauling one of the cut trees, when the tractor he was driving flipped over and fell on top of him.
On June 25, 2003, Flowers sued both Pope and Gordon, alleging negligence, breach of contract, and fraud. On June 10, 2004, Pope filed a motion for a summary judgment. On July 15, 2004, Flowers amended his complaint to add a claim for negligence under the Employer's Liability Act, Ala. Code 1975, § 25-6-1
et seq. Flowers also realleged the common-law-negligence claim, breach-of-contract claim, and fraud claim in the amended complaint. On July 26, 2004, Pope filed an amended motion for a summary judgment. The trial court granted Pope's summary-judgment motion as to all claims asserted against Pope. The trial court also certified that judgment as a final judgment under Rule 54(b) of the Alabama Rules of Civil Procedure. Flowers appealed.
 Standard of Review
The standard of review for a summary judgment is as follows:
 "`We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:
 "`"We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material facts exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw."'
 "American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002) (quoting Nationwide Prop. Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000) (citations omitted))."
General Motors Corp. v. Kilgore, 853 So.2d 171, 173
(Ala. 2002).
 Analysis A Negligence under the Employer's Liability Act
Flowers's first argument on appeal is that the trial court erred in entering a summary judgment for Pope because, he argues, there was substantial evidence indicating that Pope is liable under the Employer's Liability Act, Ala. Code 1975, §25-6-1 et seq. More specifically, Flowers argues that a summary judgment was improper because, he says, Pope breached a duty created under the Employer's Liability Act by failing to provide a safe work environment and safe equipment to use in cutting the trees on his property. Flowers alleges that Pope breached a duty created under § 25-6-1(a)(1), which states that an employer is liable to an employee "[w]hen the injury is caused by reason of any defect in the condition of the ways, works, machinery or plant connected with or used in the business of the master or employer."
In order for one to be held liable under the Employer's Liability Act, there must be an employer-employee relationship between the defendant and the plaintiff. SeeLathan Roof America, Inc. v. *Page 65 Hairston, 828 So.2d 262, 265 (Ala. 2002) (stating that proving that the plaintiff is an employee of the defendant is an "essential element of [an] Employer's Liability Act claim"). Pope argues that he cannot be held liable under the Employer's Liability Act because, he says, there is no employer-employee relationship between him and Flowers. It is undisputed that Gordon, rather than Pope, hired Flowers to cut timber and that Pope was not involved in the decision to hire Flowers or the actual hiring of Flowers. However, Flowers argues that Pope is liable for his injuries under the Employer's Liability Act because, he argues, Pope and Gordon entered into a joint venture, the single objective of which was the cutting and selling of the timber on Pope's property. Therefore, Flowers argues, he is an employee of the joint venture, not just an employee of Gordon's.[2] The main issue on appeal is whether there was substantial evidence showing that a joint venture existed between Pope and Gordon.[3]
 "This Court wrote in Arndt v. City of Birmingham, 547 So.2d 397 (Ala. 1989): *Page 66 
 "`"A joint venture is an association of persons with intent, by way of express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each participant shall stand in the relation of principal as well as agent as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture."
 "`46 Am.Jur.2d Joint Ventures § 1 (1969). As we stated in Moore v. Merchants Planters Bank, 434 So.2d 751, 753 (Ala. 1983), "while every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control." (Emphasis added [in Arndt].)
 "`What constitutes a joint venture is a question of law, but whether a joint venture exists has been held to be a question of fact for the jury. 46 Am.Jur.2d Joint Ventures § 7 (1969). Unless the trial court can say that the parties were or were not engaged in a joint venture as a matter of law, the question must be presented to the jury. As between the parties themselves, the relationship of joint venturers is a matter of intent. As to third persons, it is generally the rule that the legal rather than the actual intent of the parties controls. 46 Am.Jur.2d Joint Ventures § 9 (1969). "The burden of establishing the existence of a joint venture is upon the party asserting that the relation exists." Moore v. Merchants Planters Bank, 434 So.2d 751, 753 (Ala. 1983); Kim v. Chamberlain, 504 So.2d 1213 (Ala.Civ.App. 1987).'
 "547 So.2d at 399-400; see Moore v. Merchants Planters Bank, 434 So.2d 751, 753
(Ala. 1983)."
Environmental WasteControl, Inc. v. Browning-Ferris Indus.,Inc., 657 So.2d 885, 887-88 (Ala. 1995).
 "The elements of a joint venture have been held to be: a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a right to mutual control or management of the enterprise; expectation of profits; a right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise. While every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control."
Moore v. Merchants Planters Bank,434 So.2d 751, 753 (Ala. 1983) (citing 46 Am. Jur.2d JointVentures § 12 (1969)).
In Moore, the plaintiff sued to recover for paving work he performed in a subdivision development.Moore, 434 So.2d at 752. The plaintiff alleged the existence of a joint venture between Johnny O'Grady and Tommy Baker, who owned adjoining property in the subdivision development. 434 So.2d at 752-53. The plaintiff sought to prove that Baker and O'Grady had a joint venture in order to enforce against Baker the debt incurred by O'Grady for the paving work.434 So.2d at 753. The plaintiff argued that because O'Grady and Baker were engaged in a joint venture in *Page 67 
developing the subdivision, they were jointly and severally liable for the debt incurred for the paving work.434 So.2d at 753.
This Court held that the evidence did not support a finding of a joint venture between O'Grady and Baker. Moore,434 So.2d at 753. First, we held that there was no evidence of a community of interest because O'Grady and Baker separately owned their respective portions of the subdivision development. In addition, O'Grady and Baker both arranged for separate loans to purchase their respective properties, and they kept money received from the loans in separate accounts. When O'Grady sold one of his lots, O'Grady received all of the benefits from the sale and Baker received nothing. Id.
Second, this Court held that there was no evidence to show joint control in the development of the subdivision.434 So.2d at 754. The plaintiff had negotiated and contracted with O'Grady to do the paving work. The plaintiff had not interacted with or contracted with Baker. The plaintiff knew that O'Grady had a reputation as a general contractor, and the plaintiff relied on O'Grady as the general contractor. The plaintiff had also submitted all of his bills to O'Grady. O'Grady had supervised the paving work, and Baker had never supervised any of the work related to the development of the subdivision. The Court held that the evidence indicated that "the relationship between O'Grady and Baker was clearly one of general contractor and owner, rather than that of two joint venturers."434 So.2d at 754.
In Underwood v. Holy Name of Jesus Hospital,289 Ala. 216, 218, 266 So.2d 773, 775 (1972), the plaintiff sued a hospital and a doctor alleging that they were negligent in X-raying and treating her fractured wrist. The doctor had taken the X-rays of the plaintiffs wrist and had failed to identify the fracture. 289 Ala. at 220, 266 So.2d at 777. The plaintiff sought to prove that the doctor and the hospital were engaged in a joint venture so that the negligence of one could be imputed to the other. The plaintiff specifically argued that because the doctor and the hospital split patient fees the doctor and the hospital were engaged in a joint venture.289 Ala. at 219, 266 So.2d at 775. However, the evidence indicated that the doctor received fees from the patients he treated, even if the hospital operated at a loss. Therefore, this Court held that because there was no evidence indicating that the doctor had "a proprietary interest in the real or personal property involved in the function of [the radiology] department or that the parties had agreed to share in the losses if any occurred[,]" there was not sufficient evidence of the existence of a joint venture between the doctor and the hospital.289 Ala. at 220, 266 So.2d at 776.
Pope argues that Flowers did not meet his burden of proving that Pope and Gordon were engaged in a joint venture.See Moore, 434 So.2d at 753 ("The burden of establishing the existence of a joint venture is upon the party asserting that the relation exists."). "[I]t is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control."Moore, 434 So.2d at 753. Therefore, to determine whether the summary judgment for Pope was proper, we must first address whether there was substantial evidence of a community of interest and joint control between Gordon and Pope so as to establish the existence of a joint venture.
 1. Community of Interest
Flowers argues that he presented substantial evidence of a community of interest between Gordon and Pope by virtue of the undisputed fact that Gordon and *Page 68 
Pope agreed to split the proceeds of the sale of the timber equally. Although Gordon and Pope agreed to split the proceeds of the timber sale, the splitting of fees alone is not substantial evidence of a community of interest. SeeUnderwood, 289 Ala. at 220, 266 So.2d at 776 (holding that even though there was evidence of a fee-splitting arrangement between the hospital and the doctor, there was insufficient evidence of a joint venture). The evidence presented by Pope shows that, like the doctor and hospital inUnderwood, Gordon and Pope did not have an equal proprietary interest in the sale of the timber. Pope presented evidence indicating that Gordon alone hired Flowers and that Gordon alone paid for Flowers's services. There is no evidence showing that Pope agreed to pay for laborers such as Flowers to cut the timber. In addition, Pope presented evidence indicating that Gordon alone was in the timber-cutting business and that Gordon had multiple job sites where he was planning to cut timber when Flowers was hired. Like the doctor inUnderwood, Pope would receive proceeds from the sale of the timber even if Gordon operated at a loss. Thus, Pope did not undertake the risks or expenses Gordon undertook and, unlike Gordon, could not have lost money on the arrangement. Although Pope and Gordon agreed to split the proceeds of the sale of the timber, Flowers failed to present sufficient evidence to demonstrate that there was a "community of interest" necessary for the existence of a joint venture.See Underwood, 289 Ala. at 220, 266 So.2d at 776.
 2. Joint Control
Even if there was a "community of interest" between Flowers and Gordon, however, there is insufficient evidence to show that both Pope and Gordon had a right of joint control over the cutting and selling of timber on Pope's property. Flowers argues that he presented substantial evidence indicating that both Gordon and Pope exercised joint control over the cutting of trees on Pope's property. Flowers states that it is undisputed that Pope allowed Gordon to use his tractor for the job and that Pope told Gordon to "be careful" when using the tractor. In addition, Flowers also states that it is also undisputed that Pope directed Gordon to cut specific trees on the property and that Pope offered to help Gordon on the week-ends or when he was not working at his regular job. However, these actions by Pope do not amount to substantial evidence indicating that both Gordon and Pope had a right to control the job of cutting and hauling the trees on Pope's property.
On the contrary, Pope presented substantial evidence indicating that he did not have a right to joint control with Gordon over the operation. Pope presented the following evidence in support of his motion for a summary judgment: Gordon was in the timber-cutting business; Pope did not have expertise or knowledge related to cutting and selling timber and he was not in the timber business; Gordon controlled the hiring of labor for the timber-cutting work on Pope's property; Pope was not involved with Gordon's decision to contract with Flowers for employment; Pope never met Flowers until after Flowers's injury; Gordon alone negotiated with Flowers as to the amount he would be paid and Gordon paid Flowers; with the exception of the tractor, Gordon provided all of the material necessary to complete the job of cutting and hauling the trees on Pope's property; Gordon alone supervised the cutting and hauling of the timber on Pope's property; Pope was not present on his property when the work was being completed; and Gordon contacted timber companies to obtain information about timber *Page 69 
prices, and he alone dealt with the timber companies to negotiate a sales price.
Like Baker in Moore, Pope had no involvement with Gordon's decision to contract with Flowers for employment, and, like Baker, Pope had no direct involvement in the day-to-day operations related to the cutting and hauling of the timber. Pope argues that the evidence shows that only Gordon had the right to hire and fire workers to cut and haul timber on Pope's property. Flowers did not present any evidence showing that Pope had the right to control whom Gordon hired to help with the job. Flowers did not present any evidence to show that Pope had the right to fire Flowers. In addition, like the general contractor in Moore, Gordon alone supervised the cutting of the timber on Pope's property and ran the day-to-day operations related to the cutting and hauling of trees on Pope's property. Pope testified that he "left it up to Terry Gordon regarding how to cut down the pine trees and how to pull the logs." Flowers has not presented any evidence showing that Pope had either the legal or actual right to control any of the work. Instead, Pope presented substantial evidence that there was no right of joint control of the timber-cutting operation.
In his reply brief, Flowers argues that the facts of Kimv. Chamberlain, 504 So.2d 1213 (Ala.Civ.App. 1987), support his argument that Pope and Gordon were engaged in a joint venture. In Kim, the plaintiff brought his vehicle to a body shop to have it repainted. The owner of the building, Kim, rented the building to the general manager of the body shop, Caire. In addition, Kim's son worked with Caire at the body shop. The plaintiff met with Caire and Kim's son and was given an estimate for the painting job. After the vehicle was painted, the plaintiff sued Caire and Kim, alleging that the vehicle was not painted in a workmanlike manner and that the vehicle had been damaged while it was at the body shop.504 So.2d at 1214. The trial court found that Caire, Kim, and Kim's son were joint venturers with regard to the painting of the plaintiffs vehicle. 504 So.2d at 1213. Kim appealed, arguing that there was not substantial evidence indicating that a joint venture existed among the three.
The Court of Civil Appeals held that there was sufficient evidence of a community of interest to support the finding of a joint venture because the evidence demonstrated that Caire paid Kim rent by giving him 50% of what he earned from customers in the body shop. 504 So.2d at 1214-15. The evidence also demonstrated that Caire and Kim split the proceeds paid by the plaintiff equally. 504 So.2d at 1215. The Court of Civil Appeals likewise held that there was substantial evidence of joint control. Id. Testimony showed that "Caire and [Kim] were in business together and shared equally in the profits, and that Caire had to obtain the approval for work on each vehicle and its price from the Kims." 504 So.2d at 1214. The court held:
 "Through his son, [Kim] inspected the plaintiffs van and concurred in the price to be charged for painting it. [Kim] accepted the plaintiffs $500 check, apparently inserted his name as the payee thereof, and endorsed the check. Evidentially, Caire and [Kim] shared in the proceeds from the check, for they were to equally divide painting receipts. Joint control was exercised by Caire and by [Kim], who acted through his son."
504 So.2d at 1215.
As was the case in Kim, Gordon and Pope agreed to split the proceeds from the sale of the timber. However, the similarities between the facts of this case and the facts ofKim end there. In Kim, there *Page 70 
was evidence indicating that Caire had to obtain approval from the Kims before beginning work on every vehicle and that he had to obtain the Kims' approval as to the price charged for the work. In contrast, there is no evidence indicating that Gordon had to obtain Pope's approval for cutting or hauling the timber in a specific manner. In addition, there is no evidence indicating that Gordon had to obtain Pope's approval before selling the timber to a timber company for a certain price. Rather, the evidence shows that Gordon had complete control over the methods used in cutting and hauling the timber and that Gordon had control over negotiating a sales price with the timber company.
We hold that Flowers failed to meet his burden of presenting substantial evidence that Pope and Gordon had entered into a joint venture; therefore, the trial court did not err in entering a summary judgment for Pope because Pope cannot be held liable under the Employer's Liability Act under a joint-venture theory.
 B. Common-Law-Negligence Claim
In his complaint, Flowers alleged a common-law-negligence claim against Pope in addition to the negligence claim alleged under the Employer's Liability Act. Although Pope devotes a portion of his brief to addressing the common-law-negligence claim brought against him, Flowers does not argue on appeal that the trial court erred in entering a summary judgment for Pope as to this claim. Therefore, there is no need to address this issue on appeal. See Waddell Reed,Inc. v. United Investors Life Ins. Co., 875 So.2d 1143,1167 (Ala. 2003) ("Issues not argued in a party's brief are waived." (citing Bogle v. Scheer, 512 So.2d 1336,1337 (Ala. 1987))).
 C. Breach-of-Contract Claim
Flowers argues on appeal that the trial court erred in entering a summary judgment for Pope on the breach-of-contract claim because, he says, Pope failed to present substantial evidence at the summary-judgment stage to negate any of the elements of a breach of contract. In his complaint and amended complaint, Flowers alleges that a contract was formed between Gordon and Flowers and that Gordon breached this contract. Flowers alleges that he and Gordon made an agreement that if Flowers performed work on Pope's property and was injured while performing that work, Gordon "would file a claim on his insurance to cover any injury to the plaintiff." Flowers alleges in his complaint that Gordon breached this agreement because Gordon did not file a claim on Flowers's behalf, and, therefore, Flowers had to pay for his own medical expenses. We hold that the trial court did not err in entering a summary judgment for Pope as to the breach-of-contract claim because Flowers never alleges in the complaint that a contract existed between Flowers and Pope or that, if one did, Pope breached it. Even if we construed the complaint to allege that Gordon's breach of contract is imputed to Pope because of the alleged joint venture that existed, the trial court properly entered a summary judgment for Pope because Flowers failed to meet his burden of proving that a joint venture existed between Gordon and Pope.
 Conclusion
The trial court's summary judgment in favor of Pope is affirmed.
AFFIRMED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] On appeal, Flowers does not argue that the trial court erred in entering a summary judgment for Pope as to the fraud claim. Therefore, this argument has been waived. See Waddell Reed, Inc. v. United Investors Life Ins. Co.,875 So.2d 1143, 1167 (Ala. 2003) ("Issues not argued in a party's brief are waived.").
[2] Flowers argues that because Gordon and Pope were engaged in a joint venture, Gordon's negligence can be imputed to Pope.See Underwood v. Holy Name of Jesus Hosp.,289 Ala. 216, 220, 266 So.2d 773, 776 (1972) ("[T]he negligence of one participant in the joint venture or enterprise may be imputed to another participant so as to render the latter liable for an injury sustained by a third person as a result of the negligence. . . . We have held that each joint adventurer is liable to contribute ratably for the losses resulting from the adventure. . . .").
[3] Pope argues in his brief that there was not substantial evidence to show that Pope was Flowers's employer because, he says, there was insufficient evidence of the "factors" necessary for an employment relationship to exist. Pope cites LathanRoof America, Inc. v. Hairston, 828 So.2d at 265, which states that this Court considers a number of factors when determining whether an employment relationship exists. This Court noted that "[o]bviously, one of the most important factors is whether there is evidence of an offer of employment and an acceptance of that offer. Another important factor is `the degree of control the alleged [employer] retains over the alleged [employee].'" 828 So.2d at 265 (quotingGossett v. Twin County Cable T.V., Inc.,594 So.2d 635, 639 (Ala. 1992)). "Other factors include `the method by which one receives payment, the furnishing of equipment, . . . and whether one had the right to terminate the employment of the worker.'" Lathan Roof America, 828 So.2d at 266
(quoting Boyd v. Hinkle Roofing Sheet Metal,Inc., 596 So.2d 947, 949 (Ala.Civ.App. 1992)).
In contrast to the arguments made by the plaintiff inLathan Roof America, Flowers does not argue on appeal that there was a "direct" employment relationship between him and Pope. Rather, Flowers argues that an employment relationship was created as a result of the alleged joint venture between Pope and Gordon. Therefore, it is unnecessary to address Pope's argument that Flowers failed to present substantial evidence of a "direct" employment relationship.
Pope also argues that there was no substantial evidence that Flowers was an employee under the "borrowed-servant" doctrine or the "special employer" doctrine. (See Pope's brief, pp. 14-18.) However, Flowers does not argue on appeal that he was a "borrowed-servant." See Defoor v. Evesque,694 So.2d 1302, 1304 (Ala. 1997) ("An employee may, however, be transferred from his general employer to a `borrower' with respect to particular work to be done for that borrower and thus can subject the borrower to liability for certain of the employee's acts."). Flowers also does not argue on appeal that Pope is a "special employer." See InnisfreeCorp. v. Estate of Jourdan, 867 So.2d 348, 352
(Ala.Civ.App. 2003) (describing special employers as "`"individuals or businesses who, for practical purposes, may be considered primary or co-employers of the injured employee"'" (quotingGout v. Medrano, 630 So.2d 362, 364 (Ala. 1993), quoting in turn Rhodes v. Alabama Power Co.,599 So.2d 27, 28 (Ala. 1992))). Therefore, it is also unnecessary to address Pope's argument that Flowers failed to present substantial evidence indicating that he was a borrowed servant.
In fact, Flowers argues on appeal that an employment relationship existed between him and Pope only because of the existence of a joint venture between Gordon and Pope. *Page 71